**Brent La Salle STEIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45974.**

Court of Criminal Appeals of Texas.

April 11, 1973.

Fred Time, Dallas, for appellant.

Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

### OPINION

ROBERTS, Judge.

This appeal is taken from a conviction for the offense of interfering with a peace officer during a civil disturbance. Punishment was assessed at three years' confinement.

Appellant raises fourteen grounds of error.

Several of appellant's grounds attack the conduct of the prosecutor during the trial proceedings. The record reflects that defense counsel filed a motion in limine seeking to restrain the State from using the term "hippie", referring to appellant by any name other than Brent Stein,[1] or alluding either generally, specifically or by analogy to any other riot or disturbance. Such motions were granted by the trial judge.

1. Apparently, as editor of an underground newspaper, appellant was known as Stoney Burns.

Nevertheless, throughout the entire proceedings, the prosecutor violated the judge's order. Below are only a few examples of his conduct during the trial:

"Q   Did some of the others in this immediate group around the leader, Brent Stein—did any of them look like he did, more or less that same life style?

"MR. TIME [DEFENSE COUNSEL]: Objection, and this is in regard to the Motion in Limine which we have filed.

"THE COURT: Overruled.

"MR. TIME: Exception.

"Q   (By Mr. Stauffer)   Did they look *similar to him in life style*? (Emphasis added)

"A   Yes.

"Q   This immediate core around him, or did they look like Mennonites—

"A   Yes.
"MR. TIME: Objection, Your Honor—

"Q   (By Mr. Stauffer)—or Amish people with their buggies?

"MR. TIME:—he's putting words into the—

"MR. STAUFFER: Trying to give a choice.

"MR. TIME: He's leading the witness.

"THE COURT: Sustained."

\*     \*     \*     \*     \*     \*

"Q   (By Mr. Stauffer)   Did you know the Police Department had a Criminal Intelligence Division?

"A   Yes.

"Q   You know what that has to do with?

"A   Yes.

"Q   You are aware of what is going on in your day and age, are you not?

"MR. TIME: Objection.

"THE COURT: Sustained.

"Q   (By Mr. Stauffer)   Are you aware of what's happening to America?

"MR. TIME: Objection.

"THE COURT: Sustained."

\*     \*     \*     \*     \*     \*

"Q   Yes. Well, now, isn't it true that the reason they wanted him back was because he was their leader?

"MR. TIME: Objection, Your Honor. He's leading the witness.

"THE COURT: Overruled.

"MR. TIME: Exception.

"A   I have no reason to know why they wanted him back, particularly, other than they did.

"Q   (By Mr. Stauffer)   But you don't deny—to them, these people that were making these demands on the police, he was their guru or their Messiah?

"MR. TIME: Objection.

"THE COURT: Sustained.

"Q   (By Mr. Stauffer)   Let me ask you, have you ever seen anybody with typhoid fever?

"MR TIME: Objection.

"THE COURT: Sustained.

"Q   (By Mr. Stauffer)   Now, I believe you testified earlier somebody had come back from Police Headquarters and reported to the group after the police had left that their Messiah was all right and hadn't been beaten?

"MR. TIME: Objection.

"THE COURT: Sustained."

\* \* \* \* \* \*

"Q  Well, let me ask you this: How would they know your name, all of these people, to call you Stoney?

"MR. TIME: Objection, Your Honor.

"THE COURT: Sustained.

"MR. TIME: Ask the Court to ask Mr. Stauffer to refrain from that and ask the Court to instruct the jury to disregard that.

"THE COURT: Your objection was sustained.

\* \* \* \* \* \*

(Questioning of the appellant)

"Q  Back on the 20th—the 12th of April 1970, you weren't working as an investigator for any law firm, were you?

"A  No, sir.

"Q  You don't claim that, do you?

"A  No. sir.

"Q  Or, did you have some connection with Mr. Time [Defense Counsel] and his law firm then?

"A  As an investigator, I couldn't have done something like that unless we were retained as attorneys.

"Q  It would have been barratry, wouldn't it?

"A  Yes, sir.

"MR. TIME: Objection as to what it would have been.

"THE COURT: He's answered.

"Q  (By Mr. Stauffer) *You're no ambulance chaser*—(Emphasis supplied)

"MR. TIME: Objection.

"THE COURT: Sustained.

"MR. TIME: He's making remarks at counsel, reaching through the Defendant.

"THE COURT: Sustained."

Perhaps the most flagrant conduct exhibited by the prosecutor occurred at a rather early stage of the trial. A Dallas police officer was being examined by defense counsel when the following colloquy took place:

"Q  You made a simple affidavit, but—

"A  I made one affidavit and one Dear Chief I know of right offhand.

"Q  Did you say anything in the Dear Chief letter about any obscene language?

"A  I don't recall. I would have to see it.

"Q  You could get that for us and bring it for the jury to see, couldn't you?

"A  I don't know, sir.

"Q  Would you try?

"MR. STAUFFER: We have it right here, if you would like to have it.

"Q  (By Mr. Time) Let me ask you this —

"MR. STAUFFER: Did you say you want it for the jury? Do you want it for the jury?

"MR. TIME: Yeah, if you will, let me have it.

"MR. STAUFFER: If you want it for the jury, we will be glad to let you have it.

"Q  (By Mr. Time) Let me ask you this: Was your memory better on April 12th than it is today about the incident at Lee Park?

"A  The memory would be much better, naturally, on April the 12th.

"Q  You did not make any statement, then, under oath?

"A  I did not add in the cuss words that I heard out there, no sir.

"Q  Did today, though?

"A   You asked me.

"Q   I didn't.   You mean Mr. Stauffer asked.

"A   Yes.

"MR. STAUFFER: We have no objection to that. Did I understand you to say you wanted to put it in evidence?

"THE COURT: No. Defendant's Exhibit No. 16 is admitted into evidence.

"MR. STAUFFER: Have no objection if you want the Dear Chief in evidence.

"(An instrument was tendered to Mr. Richman by Mr. Stauffer.)

"Q   (By Mr. Time)   Did I understand you to say today that on April the 12th you said—

"(*Whereupon, Mr. Stauffer grabbed the instrument from Mr. Richman's hand*) (Emphasis supplied)

"MR. STAUFFER: (To Mr. Richman) I'm not offering that for you to read. If you want to put it in evidence, I'm offering it for the jury.

"THE COURT: Members of the jury, please retire in the jury room.

"(Whereupon, the jury was retired from the Courtroom and the following proceedings were had outside the presence and hearing of the jury:)

"THE COURT: Mr. Stauffer, you're in contempt of Court. . . ."

During argument, Mr. Stauffer told the jury:

"God knows what it's going to be two years from now. Crime is eating you up and it's this foolish, stupid type of stuff that these young people are pulling here —certainly not all of them. Not all of them—I don't mean to take a brush and include them all, but there's an element out here and you have seen them and I'm getting sick of them. I'm getting my belly full of them.

"MR. TIME: Objection to what Mr. Stauffer is getting.

"THE COURT: Sustained.

"MR. STAUFFER: You heard all the evidence in this case and you know what I'm talking about. I don't have to draw you any diagram. There sets the type I'm talking about right there and his name is Brent LaSalle Stein, the accused in this case. Aw, they've got him dressed up today. They've got him in a shirt and tie and they got him so he'll sit up there. They got him over at their office where they can watch him and work with him and coach him and get him ready.

"MR. TIME: Objection, Your Honor.

"THE COURT: Sustained.

"MR. TIME: Ask the Court to instruct the jury, particularly the part about coaching.

"THE COURT: Disregard the part about coaching, please. Do you consider it for any purpose.

"MR. STAUFFER: When he sits up there in that witness stand in front of you—you observed his demeanor. Yes. 'Were you doing anything out there?' 'Well, I was there, yes.' I mean, such a pukey demonstration from that witness stand turned my stomach.

"MR. TIME: Objection to what happened to his gastric problems."

Recently, this Court has been faced with numerous cases where improper arguments and sidebar remarks by the prosecutor have forced us to reassert the critical importance of convicting an accused only upon that evidence presented, without attempting to inflame or prejudice the minds of the jurors. E. g., White v. State, Tex.

Cr.App., 492 S.W.2d 488 (1973) ; Hefley v. State, 489 S.W.2d 115 (Tex.Cr.App.1973) ; Lott v. State, 490 S.W.2d 600 (Tex.Cr.App. 1973).

Some of these cases have caused this Court a great deal of consternation, resulting in several split decisions. We all recognize the difficulty in drawing the line between harmless argument outside the record and arguments calculated to deprive the defendant of a fair and impartial trial —the difficulty lies in actually applying such a necessarily enigmatic standard.

In that sense, we feel fortunate in the record before us today. The present case is rather easily resolved, since the prosecutor left little room for reasonable minds to differ as to whether his actions would be labeled harmless.

We need not consider appellant's remaining grounds of error.

The judgment is reversed and the cause remanded.

MORRISON, J., concurs in the result.