Opinion filed October 1, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed October 1,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-08-00246-CR 

                                                     __________

 

                                     
JUAN JOSE PONCE, Appellant

 

                                                           
vs.

 

                                      
STATE OF TEXAS, Appellee

 



 

                                       
On Appeal from the 244th District Court

 

                                                       
Ector County, Texas

 

                             
                 Trial Court Cause No. C-34,397

 



 

                                                                   
O P I N I O N

After
the jury convicted Juan Jose Ponce of six counts of aggravated sexual assault,
it assessed his punishment at life imprisonment on each count.  The jury also
assessed a $5,000 fine on each count except for the second count.  On the
second count, the jury assessed a fine of $10,000.  The trial court ordered
that the sentence on the second count was not to commence until the sentence 
on Count One was concluded.  It also ordered that the sentence on Count Three
was not to commence until the sentence on Count Two was concluded.  The
sentences on the remaining counts were to run concurrently with the sentence on
Count Three.  We affirm.








Ponce
presents us with six issues on appeal.  In the first three of those issues,
Ponce claims that his trial counsel was ineffective.  In Ponce=s fourth issue, he asserts
that the trial court erred in connection with its ruling on a jury argument
objection.  Ponce makes legal and factual insufficiency arguments in his fifth
and sixth issues.

We
will first address the legal and factual sufficiency issues.  

When
we review a claim that the evidence is legally insufficient, we consider all of
the evidence in the light most favorable to the verdict.  We determine whether,
based on that evidence and the reasonable inferences from it, any rational
juror could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307 (1979).  When we perform a
legal sufficiency review, we are not to substitute our judgment for that of the
factfinder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999).

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light. Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006).  We determine whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust. Id. at 417.  To reverse under the
second ground, we must determine, with some objective basis in the record, that
the great weight and preponderance of all the evidence, though legally
sufficient, contradicts the verdict.  Id.  We may not simply substitute
our judgment for that of the factfinder. Johnson v. State, 23 S.W.3d 1,
12 (Tex. Crim. App. 2000).  Unless the record clearly reveals that a different
result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because evaluation of credibility and demeanor is often involved in the
resolution of any conflicts.  Id. at 8.  Therefore, in matters
concerning the weight and credibility of the evidence, we must give due
deference to the factfinder=s
determinations.  Id. at 9.  When conducting a sufficiency review, we
consider all the evidence admitted, whether properly or improperly.  Conner
v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).








The
State presented evidence that A.S. was seventeen years old at the time of
trial.  When A.S. was five or six years old, Ponce began living with her
mother.  A.S. and her sister, Y.S., lived with them.  A.S. testified that, when
she was in the second or third grade, Ponce began to watch her, as well as her
sister, change clothes and take showers.  When A.S. was six or seven years old,
Ponce Aripped@ her dress and tried to
grab and rub her leg.  Ponce beat her so many times that she could not remember
the first time.

When
A.S. was in the third or fourth grade, Ponce called her into his and her mother=s bedroom, locked the door,
started beating her, threw her onto the bed, tore off her shirt, put her hands
up over her head, tried to kiss her breasts, took her pants off, all the while
punching her and pulling her hair.  He also penetrated her vagina with his
penis.

A.S.
testified that, after this first instance, Ponce warned her about saying
anything to anyone.  He discussed hurting her mom, her, her sister or Akilling [her] or killing
them and having [her] there the rest of [her] life, torturing [her].@

Later,
according to A.S.=s
testimony, Ponce began to stick various things such as bananas, carrots, glue
sticks, or other items either in her vagina or her anus, while also penetrating
the opposite opening with his penis.  He also used a vibrator on her.  A.S.
told the jury that Ponce would make her watch pornographic videos and then make
her do what the people on the videos were doing including oral sex.  When asked
how many times Ponce had sexually assaulted her, A.S. repeatedly said, A[T]oo many to count.@

The
sexual assaults, as described by A.S. (sometimes up to three times a day),
continued until A.S. ran away in late February 2007.  A.S. told the jury that
that was when AJuan
Ponce raped [her] for the last time.@








On
March 8, 2007, A.S. ended up at her uncle and aunt=s house (the uncle was A.S.=s biological father=s brother).  A.S. had not
seen them for some ten years, but she finally located them and made
arrangements to go to their home.  When A.S.=s
aunt found out that A.S. was coming to her house, she called A.S.=s mother and A.S.=s mother went there. 
Because she was afraid that she would have to go back home, A.S. tried to run
away again when she saw her mother.  A.S. had to be physically restrained.  She
did not go home but, rather, continued to stay with her aunt and uncle for
almost one year and five months, during which time she would wake up screaming
and crying because of nightmares she was having.  It was as A.S. was being
restrained that A.S. first told her family about the sexual assaults.  Then,
her aunt called the police.  After the police and Child Protective Services had
completed their interviews for the night, A.S.=s
mother went home to Ponce.  She did not A100%@ believe the claims that
A.S. was making, nor did she believe Ponce A100%@ either.

A.S.=s mother told the jury that
Ponce failed to come home on the following Monday night.  A.S.=s mother did not hear from
Ponce until nine days later.  He told her that he had been attacked and was in
a hospital in Tijuana, Mexico.  Later, he was found at his mother=s house in deep South
Mexico.  Fearing that personnel of the Child Protective Services would not let
her see her daughters unless Ponce was in jail, A.S.=s mother worked with the police to entice
Ponce to return to the United States.  A.S.=s
mother no longer had any doubts about A.S.=s
story.  When Ponce did agree to return, Ponce=s
brother took A.S.=s
mother to the Mexican border.  A.S.=s
mother went into Mexico to get Ponce.  When they tried to cross the border back
into the United States, the authorities arrested Ponce.

Ponce
testified and denied committing the offenses.  He suffered from diabetes and
high blood pressure and was not physically able to do the things of which A.S.
accused him.  These conditions also prohibited him from having regular sexual
relations with A.S.=s
mother.  Ponce also said that the vibrator that A.S. referred to was used by
her mother and that the videos to which A.S. referred were her mother=s videos.  He maintained
that the trip he took to Mexico after A.S. made the accusations against him was
to obtain treatment for his high blood pressure.  He was also going to check on
his mother; he had been told that she was very ill.  He also claimed that A.S.,
A.S.=s mother, and
A.S.=s aunt were
framing him.

Ponce
had never told anyone before, but when he was nine years old, he was selling
bubble gum in his hometown in Mexico.  Some Aguys@ who were smoking marihuana
took his money.  He hit one of them with some rocks.  They grabbed him, and one
of them put his penis Ainside
of [Ponce].@ 
Therefore, he testified that he could never do anything like that to any other
person because he knew what it was like.  He said that he never told anyone
about the assault until during his testimony because he Adidn=t
want to be called a homosexual@
and he was embarrassed by it.  Ponce told the jury that, if he ever did
anything like that, he Awould
take [his] life in front of your eyes.@








Christin
Abbott is a Sexual Assault Nurse Examiner (SANE) who had performed over 300
sexual assault examinations.  She examined A.S. when A.S. was almost sixteen years
old.  She took a full history from A.S., and in that history, A.S. relayed much
of the same information as she did in her testimony.

Abbott
performed a physical examination of A.S. and testified that she found injuries
to both the female sexual organ and the anus.  The anal opening was abnormally
large.  According to Abbott, that meant that A.S.=s
anus was Aused to
accommodating something of a larger size than just stool passing.@  She told the jury that
typically it would take more than just one penetration to cause that problem. 
She also found trauma to A.S.=s
female sexual organ.  Because she had never seen an injury that completely
extended as far as this one did, a doctor was asked to repeat the vaginal test
four days later.  The doctor agreed with Abbott=s
findings.  Abbott said that this type of injury typically indicates sexual
assault.

During
the trial, the State introduced the results of DNA tests.  A.S. testified that,
at various times, Ponce took her to feed the dogs at his brother and sister-in-law=s house; his brother and
sister-in-law were in Mexico. Ponce repeatedly sexually assaulted her in that
house.  During the incidences at that house, he also repeatedly stuck a stick
in her vagina.  The stick was identified and admitted into evidence.  After
Ponce sexually assaulted A.S. at that house, he would clean himself with
whatever might be available such as clothing or rags and put that material
under the bed or in a pipe  behind a water heater.  A.S.=s aunt testified that she and A.S.=s mother went to that house
and, as A.S. had told them they would, they found a rag and a shirt that they
believed might contain Ponce=s
DNA.  They notified police, and the police came and collected the items.

Sarah
Rothwell is a forensic scientist with the Department of Public Safety Crime Lab
in Lubbock.  She received two towels, a piece of white toilet paper, a buccal
swab taken from Ponce, and a buccal swab taken from A.S.  She tested the toilet
paper and the towels and confirmed the presence of semen on the items.  She
prepared samples from the areas where the semen was located and prepared them
for analysis by a DNA analyst.








Daniel
Lindley is a forensic scientist in the DNA section of the Texas Department of
Public Safety Crime Laboratory in Lubbock.  He performed DNA testing on the
toilet paper, one hand towel, the buccal swab taken from Ponce, the buccal swab
taken from A.S., and a buccal swab taken from A.S.=s mother.  Lindley testified at trial and also
submitted his written reports.

Lindley
reported that, to a reasonable degree of scientific certainty, Ponce was the
source of the DNA profile taken from the epithelial cell fraction of a stain on
the toilet paper.  The probability of randomly selecting an unrelated person as
the source of the profile was 1 in 624.2 quadrillion.

Lindley
also obtained a DNA profile from sperm cell fractions on the hand towel and
sperm cell fractions on the toilet paper.  The two stains were consistent with
another person=s DNA
being present.  A.S. and A.S.=s
mother were both excluded as contributors to this profile.  However, Ponce
could not be excluded as the contributor of the major component in this
profile.  The probability of randomly selecting an unrelated person as the
source of the profile was 1 in 624.2 quadrillion.  To a reasonable degree of
scientific certainty, Ponce was the source of the DNA profile taken from the
sperm cell fractions of the stains on the toilet paper and hand towel.  

A
partial DNA profile was taken from epithelial cell fractions on the hand towel. 
The profile was consistent with a mixture of different DNAs.  A.S. and A.S.=s mother were excluded as 
contributors to this profile also.  Lindley testified that it was possible that
a female=s DNA might
not be present on these items even though that female might have had sexual
intercourse with the major contributor.  Ponce could not be excluded as a
contributor to the epithelial cell fractions profile at ten different loci. 
However, at those loci, the probability of randomly selecting an unrelated person
who could be a contributor to this profile is 1 in 7.143 million.

As
relevant to this case, the elements of the offense of aggravated sexual
assault, as charged in Counts One, Three, Four, Five, and Six of the indictment
are set forth in Tex. Penal Code Ann.
' 22.021(a)(1)(B)(i),
(a)(2)(A)(ii) and (iii) (Vernon Supp. 2008).  The only differences in any of
these counts as charged in the indictment are the places penetrated, the means
of penetration, and the manner in which death or imminent serious bodily injury
would be inflicted and upon whom it would be inflicted.   








 In
order to prove that Ponce committed the offense of aggravated sexual assault as
charged in the indictment, the State had to show beyond a reasonable doubt that
he intentionally or knowingly caused the penetration of the anus or sexual
organ of a child by any means and that the complainant was younger than
fourteen years of age.  See Section 22.021(a)(1)(B)(i), (a)(2)(B).  A
complainant=s
testimony alone is sufficient to support the jury=s
finding that sexual contact or penetration did in fact occur.  See Garcia
v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978);  Tinker v. State,
148 S.W.3d 666, 669 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).

We
have set forth the evidence in detail.  Under the standards of review that we
have set out earlier in this opinion, we hold that any rational juror could
have found the essential elements of these offenses beyond a reasonable doubt. 
We further hold that the evidence is not so weak that the verdict of the jury
is clearly wrong and manifestly unjust.  Furthermore, the conflicting evidence
does not so greatly outweigh the evidence supporting the convictions that the
jury=s determination
is manifestly unjust.  Therefore, we find that the evidence as set forth in
this opinion is both legally and factually sufficient to support the verdict of
the jury.  Ponce=s
fifth and sixth issues are overruled.           During its jury argument, the
State referred to Ponce as a Amonster.@  In his fourth issue,
Ponce complains of the trial court=s
failing to instruct the jury to disregard that argument.  We note that the
trial court overruled Ponce=s
objection to the argument.  An objection must be perfected.  The proper way to
pursue an objection to an adverse ruling is to object, to request an
instruction to disregard, and to request a mistrial.  Brooks v. State,
642 S.W.2d 791, 798 (Tex. Crim. App. 1982).  Ponce had his adverse ruling when
the trial court overruled his objection to the argument. We will take the argument
here to be that the trial court erred when it overruled Ponce=s objection because the
trial court would not have instructed the jury to disregard evidence that it
had just admitted over objection.

The
approved general areas of jury argument, within which all proper arguments must
fall, are (1) summation of the evidence, (2) reasonable deduction from the
evidence, (3) answer to argument of opposing counsel, and (4) plea for law
enforcement.  Todd v. State, 598 S.W.2d 286 (Tex. Crim. App. 1980); Dunbar
v. State, 551 S.W.2d 382 (Tex. Crim. App. 1977); Alejandro v. State,
493 S.W.2d 230 (Tex. Crim. App. 1973).  However, even if an argument exceeds
the permissible bounds of proper jury argument, it will not necessarily
constitute reversible error.  We will find reversible error only when the
argument is extreme, when it is manifestly improper, when it injects new and
harmful facts into the case, or when it violates a mandatory statutory
provision and is therefore so inflammatory that its prejudicial effect cannot
reasonably be cured by an instruction to disregard the argument.  Long v.
State, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991).








The
complained of argument was improper.  Duran v. State, 356 S.W.2d 937,
938 (Tex. Crim. App. 1962).  A prosecutor should not refer to a defendant by
any name other than his given name or nickname.  It is improper to refer to a
defendant by a derogatory term designed to subject him to personal abuse.  Schumacher
v. State, 72 S.W.3d 43, 49 (Tex. App.CTexarkana
2001, pet. ref=d). 
However, we do not think that reversal is mandated under this record.  There is
a difference Abetween
harmless argument outside the record and arguments calculated to deprive the
defendant of a fair and impartial trial.@ 
Stein v. State, 492 S.W.2d 548, 552 (Tex. Crim. App. 1973).  The
solitary mention of the word Amonster@ in this record was not an
argument calculated to deprive Ponce of a fair and impartial trial.  The
argument was not extreme B
the State mentioned the word only one time.  The State did not, by the mention
of the word, violate any mandatory statutory provisions.  The State did not
inject any new or harmful facts into the case.  Further, in light of the
evidence of guilt in this case, including the testimony of the victim, the
evidence from the initial interviewers, the medical evidence, the evidence
showing flight, and the corroborating evidence presented though A.S.=s mother and A.S.=s aunt, we cannot say that
the error affected Ponce=s
substantial rights.  See Tex. R.
App. P. 44.2(b).  The fourth issue is overruled.

In
Issues One, Two, and Three, Ponce complains that his counsel was ineffective.

To
prevail on a claim of ineffective assistance of counsel, an appellant must
establish that his lawyer=s
performance fell below an objective standard of reasonableness and that there
is a Areasonable
probability@ the
result of the proceeding would have been different but for counsel=s deficient performance.  Strickland
v. Washington, 466 U.S. 668, 693-94 (1984); Mallett v. State, 65
S.W.3d 59, 62-63 (Tex. Crim. App. 2001).  A reasonable probability is a
probability sufficient to undermine confidence in the outcome of the trial.  Hernandez
v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  The purpose of this
two-pronged test is to judge whether counsel=s
conduct so compromised the proper functioning of the adversarial process that
the trial cannot be said to have produced a reliable result.  Thompson v.
State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).








The
review of defense counsel=s
representation is highly deferential and presumes that counsel=s actions fell within a
wide range of reasonable professional assistance. Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Appellant must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.  Jackson v. State, 877 S.W.2d 768 (Tex.
Crim. App. 1994); Hayden v. State, 155 S.W.3d 640, 648 (Tex. App.CEastland 2005, pet. ref=d).  When the record is
silent on the motivations underlying counsel=s
tactical decisions, the appellant usually cannot overcome the strong
presumption that counsel=s
conduct was reasonable.  Thompson, 9 S.W.3d at 813.  In order to defeat Strickland=s presumption of reasonable
professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. at 814
(quoting McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996)).  We do not inquire into trial strategy unless no plausible basis exists
for trial counsel=s
actions.  Johnson v. State, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981). 
When the record contains no evidence of the reasoning behind trial counsel=s actions, we cannot
conclude that counsel=s
performance was deficient.  Jackson, 877 S.W.2d at 771.

Appellant
did not file a motion for new trial.  

Specifically,
in his first issue, Ponce makes the claim that his trial counsel failed to
conduct a proper voir dire examination of the jury panel in that he failed to
challenge any of the jurors for cause and allowed biased jurors to serve on the
jury.  Ponce maintains that his trial counsel failed to tell the panel the
names of any of the witnesses who might be called to testify, failed to delve
into the relationships between any of those potential witnesses and the
potential jurors, and failed to ask the jury whether those relationships would
affect their ability to serve as fair and impartial jurors.  Neither the State
nor the trial court identified the witnesses either.

Ponce
also asserts that his trial counsel failed to ask the jury panel whether any of
them either were in law enforcement or had family members with law enforcement
experience.  The presiding juror of the jury was a member of law enforcement. 
He also knew A.S.=s
mother; he had attended elementary school with her.  He told the trial court
that he had not had any recent contact with her except to greet her in passing
from time to time.  He also told the trial court that he could not even remember
her first name.  The trial court extensively examined this juror about any bias
or prejudice  he might have from his knowing A.S.=s
mother.  He unequivocally told the trial court that he could be fair and
impartial.  He said, AI=m a police officer for the
State of Texas and I=ve
arrested my own brother, so I think I=m
a pretty fair person.@








Ponce=s trial counsel did ask the
jury panel whether any of them knew people who had been the victim of a sexual
assault.  Although several members of the jury panel indicated that they were
acquainted with people, either within or outside of their families, who had
been victims of sexual assault, Ponce=s
trial counsel did not ask any further questions on the subject.  One of the
members of the jury panel revealed for the first time, to anyone, that she had
been sexually assaulted.  Trial counsel responded courteously to the panel
member but asked her no questions.  Trial counsel also asked the jury panel
whether anyone knew anyone who had been falsely accused.  Several members
responded that they had known of persons who had been falsely accused.

The
panel member who had been the victim of sexual assault had not told anyone
about it.  One of Ponce=s
avenues of defense was to claim that he would never commit such an offense
because he had been assaulted and, like the panel member, had never told
anyone.  During the trial, the State took Ponce to task for never having told
anyone.  It is reasonable to assume that trial counsel could have left this
person on the jury with the hope that she would understand and believe Ponce=s failure to report his own
alleged sexual abuse.  Such a position is borne out by trial counsel=s final argument to the
jury:

When
we opened up asking questions of the jurors, we talked about reasonable doubt. 
We also questioned the jurors and I believe that lady sitting over there said
that she had been sexually assaulted and never told anybody.  I didn=t ask her any more
questions because I did not want to embarrass her.

 

One
of your own panel members said that she had been raped and never told anybody
and I just felt so bad about that, having to ask that question of that lady. 
Is Mr. Ponce any different from that lady over there?  Of course, he=s not going to tell
anybody.  He=s
ashamed, doesn=t want
people to think that he=s
a homosexual.

 

[The
State] makes light of the fact that he just now brought that thing up.  You saw
the tears in his eyes when he said that.  You saw the tears in his eyes when he
said that in response to one of [the State=s]
questions.

 








After
the testimony had begun, a juror informed the trial court that she had realized
that her sister Mary Carrasco B
A.S.=s counselor B would be a witness. 
Another juror separately informed the trial court that she had discovered that
her sister-in-law B
who had initially interviewed A.S. B
was a witness in the case.  Neither juror knew anything about this case or
their relative=s
involvement in it.  The trial court questioned these two jurors extensively
regarding their ability to serve as fair and impartial jurors.  Only after the
trial court was convinced of their ability to so serve did it continue with the
trial.  We also note that the two persons to whom the jurors were related were
never called to testify.

Ponce
argues that trial counsel=s
failure in these areas resulted in biased jurors serving on the jury.  He has
not shown that any of the jurors about which he complains were actually
biased.   The three jurors who knew witnesses testified that they were able to
serve fairly and impartially.  Neither has any actual bias been shown against
the law enforcement officer who served on the jury and who had arrested his own
brother.  

Even
if the doctrine of implied bias were applicable to the law enforcement officer
in this case (and we do not hold that it is applicable), that would not
establish that trial counsel could not have made valid strategical decisions to
leave the allegedly objectionable juror on Ponce=s
jury.  See State v. Morales, 253 S.W.3d 686, 698-99 (Tex. Crim. App.
2008).  An appellate court should not second-guess legitimate strategic
decisions made by trial counsel.  Id. at 696.  As the Court of Criminal
Appeals has stated, A[U]nless
there is a record sufficient to demonstrate that counsel=s conduct was not the product of a strategic
or tactical decision, a reviewing court should presume that trial counsel=s performance was
constitutionally adequate@
unless the conduct Awas
so outrageous that no competent attorney would have engaged in it.@  Id.  It was
incumbent upon Ponce to present us with a record to overcome the strong
presumption that trial counsel=s
conduct was reasonable.  He has not.  In the absence of such a record, and
consistent with Strickland, Awe
must presume that counsel is better positioned than the appellate court to
judge the pragmatism of the particular case, and that he >made all significant
decisions in the exercise of reasonable professional judgment.=@  Delrio v. State, 840 S.W.2d 443, 447
(Tex. Crim. App. 1992) (citing Strickland, 466 U.S. at 690).








Even
if we were to find that trial counsel provided ineffective assistance to Ponce,
he has not established the second prong of Strickland:  that there is a Areasonable probability@ the result of the
proceeding would have been different but for counsel=s deficient performance.  Strickland,
466 U.S. at 693-94; Mallett, 65 S.W.3d at 62-63.  A reasonable
probability is a probability sufficient to undermine confidence in the outcome
of the trial. When we review the evidence presented to the jury, which we have
outlined above, we cannot say that there is a reasonable probability that the
result of the proceeding would have been different but for counsel=s alleged deficient
performance.  Confidence in the outcome of this trial was not undermined. 
Ponce=s first issue on
appeal is overruled.

Trial
counsel=s comments
during voir dire regarding the state of the judiciary in Texas are the subject
of Ponce=s second
issue on appeal.  He claims that his lawyer=s
comments negatively affected his punishment.  During voir dire, trial counsel
said:

The
Court of Appeals Court in Philadelphia, the Judges are still wearing the long
wigs, which is the way they treat the attorneys, the way that they are superb
Judges.  We have some wonderful Judges in Philadelphia.  Sometimes, I cannot
say the same thing for the State of Texas, it=s
another story, but those Judges in Philadelphia are chosen on merit.  Here, we
just choose them on whoever can make the most money and whoever can get on the
right party, whichever party is in power at the time.  So we don=t always have the best
Judges in the Court of Appeals, the Texas Court of Criminal Appeals, but I
enjoyed working there.

 

Ponce
argues that Ait is
reasonably likely that trial counsel=s
disparaging and totally inappropriate remarks caused [the trial judge] to
exercise his authority@
to stack two of the life sentences.  We disagree.  Trial counsel appears to be
directing his remarks at the ACourt
of Appeals@ or Athe Texas Court of Criminal
Appeals,@ and not at
trial courts.  However, Ponce argues that it is clear that the trial judge was
personally offended by trial counsel=s
comments because, after a discussion between trial counsel and the trial court,
the court stated, ABut
I=m just a lowly, dumb
Texas judge, so I=m
not really understanding your argument on the wide open scope of presenting
evidence, I mean.@  We
would think that there would be no doubt that trial counsel=s statements would be
something that would personally offend the trial court.  But, Ponce=s issue goes beyond that.  
His claim is that trial counsel=s
comments so enraged the trial court that it stacked two of the six life
sentences imposed by the jury.  The result, he claims, was that he received
ineffective assistance of counsel.








We
have set forth the standards by which we review claims of ineffective
assistance.  We review this claim by those same standards.  Here, the
statements made by trial counsel may have been unwise and ill-advised, but the
record before us does not show that the making of them deprived Ponce of effective
assistance of counsel.  At most, the one remark by the trial court merely shows
that it took offense at trial counsel=s
comments.  It was up to Ponce to bring us a record that supported his claim. 
Without a record, we do not know why trial counsel made the statements that he
made, but even if we assume that in the making of them he deprived Ponce of
effective assistance of counsel, the second prong of Strickland is not
satisfied.  On this record, we cannot say that there is a reasonable
probability that the result of the proceeding would have been different but for
counsel=s alleged
deficient performance.  Confidence in the outcome of this trial was not
undermined.  Ponce=s
second issue is overruled.

The
State filed a motion in limine to exclude testimony concerning the divorce
action pending between Ponce and A.S.=s
mother.  During the cross-examination of A.S.=s
mother, Ponce=s trial
counsel attempted to impeach A.S.=s
mother on the grounds that she had a property interest in the outcome of the
criminal trial due to the pendency of the divorce proceedings.  The State
objected, and the trial court admonished trial counsel at the bench and out of
the hearing of the jury not to further violate the motion in limine.  At the
conclusion of A.S.=s
mother=s testimony,
both the State and Ponce perfected bills of exception.

In
his third issue, Ponce argues that trial counsel perfected a deficient bill of
review by only addressing A.S.=s
mother=s criminal
history and any possible extramarital affairs and not addressing the divorce
action.  Ponce alleges that he was harmed because trial counsel failed to
develop testimony that would show bias.

The
record does not support Ponce=s
contentions that trial counsel=s
actions fell below a reasonable standard.  Nothing in the record reflects what
A.S.=s mother=s testimony would have been
concerning the divorce action.  She had already testified before the jury that
she did have a property interest in the outcome of the trial.  The record does
not support Ponce=s
argument that, but for the bill of review that trial counsel perfected, there
would have been a reasonable probability of a different outcome.  The third
issue is overruled.

As
requested by Ponce, in reaching our decision in this case, we have not
considered evidence that was not admitted in the trial court.  We affirm the
judgment of the trial court.

 

October 1, 2009                                                                      JIM
R. WRIGHT

Publish.  See Tex.
R. App. P. 47.2(b).                                                CHIEF
JUSTICE

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.