**Affirmed and Memorandum Opinion filed December 31, 2020.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-20-00066-CR

_____

**ROBERT SABATINI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1557732**

## MEMORANDUM OPINION

Appellant Robert Sabatini appeals his conviction for sexual assault of a child. A jury found appellant guilty and assessed his punishment at seven years in prison. In four issues appellant contends he received ineffective assistance of counsel because his trial counsel failed to object to inadmissible hearsay and improper argument. We affirm.

BACKGROUND

In early summer 2015, the complainant, J.E. ("John")[1] joined a motocross team with his friend Marcus. Appellant was the team's coach and Marcus's father, Mark, frequently traveled with the team. John traveled to Rio Bravo, the motocross track, approximately every other weekend usually staying from Friday after school through Sunday. John remained on the team for five to six months after which John's mother made him quit the team because she "stopped feeling good about the environment he was in." John's mother testified that she felt comfortable with the environment in the beginning but when John started school in August, he began having behavioral issues, which included tearing motocross posters off his walls and being disrespectful toward others.

John, who was 14 or 15 at the time he joined the team, began to receive money from appellant after joining the team. Appellant paid John as much as $100 or $150 at a time. Appellant also bought a motocross motorcycle for John despite the fact that John was not racing, but was acting as a mechanic for the team. John's mother described other gifts such as a stand for the motorcycle, a racing jacket, motocross goggles, and other items that other team members did not receive.

John's friend Marcus testified that he met appellant at the same time John met him. Marcus was a motocross racer who joined appellant's team. Marcus testified that appellant gave John a racing motorcycle despite the fact that John did not race on the team. Marcus, Mark, and John frequently traveled together on the weekends for the motocross racing team. Mark purchased a camping trailer for Marcus, John, and him to sleep in on the weekend outings. Appellant, however, insisted that John sleep with him in a small tent instead of the trailer. Marcus observed appellant pay

---

[1] We use a pseudonym to refer to the complainant who was a minor at the time of the offense. *See* Tex. Code Crim. Proc. Ann. art. 57.02.

more attention to John than the other members of the team. John and appellant would take long walks and "disappear together, random times of the day." Appellant did not take long walks with other members of the team. Appellant provided alcohol to the team members even though they were under the legal drinking age. Appellant asked John to call him "dad" and Marcus observed that appellant appeared to try to fill in as a father figure to John.

John testified that when he first joined the motocross team he would sleep in the trailer with Marcus and Mark, and appellant would sleep in his truck. After a few weeks, appellant brought a tent and John and appellant would sleep in the tent. Appellant treated John differently than other members of the team, including paying John for the weekends of practice and racing while other team members were not paid. Appellant asked John to keep the payment a secret. John testified that he considered the money to be "kind of a bribe." Appellant bought John a motocross motorcycle, a very expensive vaporizing pen for smoking, and accessories for the motocross team. John described appellant as the first adult he had been able to trust.

The first time appellant sexually assaulted John appellant had arranged for only Marcus, Mark, appellant, and John to be at the track that weekend. After Marcus and his father went to sleep appellant walked John to a bridge in the area and began "grabbing [John] inappropriately" and kissing him. Appellant then walked John into the woods, backed him into a tree, and performed oral sex on John in addition to continuing to kiss and grope him.

The next time appellant sexually assaulted John, they were at Marcus's house and appellant came over on Friday night presumably to get ready for the motocross weekend. The two boys and two men were drinking, and Marcus and his father went to bed. Appellant and John were in the backyard where the trailer was parked. They eventually went into the trailer and appellant performed oral sex on John. John

testified that each time appellant engaged in inappropriate behavior appellant began the conversation asking John about John's parents, friendships, and his diabetes diagnosis. These questions "put [John] in a vulnerable place before starting anything."

John described another incident that occurred in a trailer at the motocross track that had been set up for ticket sales (the "ticket trailer"). Appellant and John entered the ticket trailer at night after it had closed, tripping over items near the door. Appellant performed oral sex on John while in the ticket trailer. John testified that he and appellant hurt themselves "climbing over some stuff to get" into the ticket trailer.

Two or three times appellant attempted anal sex with John but was not successful because John was resistant. Appellant asked John "to call him dad," and refer to appellant as his father. Over the course of three to five months appellant engaged in inappropriate contact with John 12 to 20 times. John's parents became suspicious of appellant, and John's stepfather started going to the track with John. The abuse ended when the team disbanded, shortly after John's stepfather started accompanying John to the racing track.

John delayed making an outcry because he knew the motocross team would be disbanded once he did. John not only did not want to lose the motorcycle appellant had given him, but he did not want the team to disband for Marcus's sake. John eventually confided in Marcus about the abuse, but Marcus did not believe him and began bullying him in school.

Appellant testified denying the allegations against him. Appellant admitted giving John cash, but said it was to compensate him for his time. Appellant noted that he paid race entry fees for other team members. Appellant denied providing alcohol to any of the racing team members including Marcus and John, and denied

4

sexual contact with John. Appellant admitted purchasing a motorcycle, gear, and a vaping pen for John, but denied that the vaping pen was expensive. Appellant said he provided the same items to other members of the team with the exception of the vaping pen.

The jury convicted appellant of sexual assault of a child and assessed punishment at seven years in prison. This appeal followed.

ANALYSIS

In four issues appellant asserts he received ineffective assistance of counsel because counsel failed to object to (1) hearsay testimony at the guilt-innocence phase; (2) improper closing argument at guilt-innocence that asserted facts not in evidence; (3) improper closing argument at guilt-innocence referring to appellant as a "monster" and John as a "lamb to the slaughter"; and (4) improper closing argument at the punishment phase.

## I.     Standard of Review and Applicable Law

We examine claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, appellant must establish that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id*. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id*. at 688. This deficiency will only deprive appellant of a fair trial when counsel's performance prejudices appellant's defense. *Id*. at 691–92. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id*. at 697.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that

counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

In this case appellant did not file a motion for new trial alleging ineffective assistance of counsel or develop a record of counsel's reasons for his actions. Therefore, in addressing counsel's alleged ineffectiveness, the record is silent as to counsel's strategy.

## II. Trial counsel did not render ineffective assistance by failing to object to hearsay statements by the forensic interviewer.

Lisa Holcombe, a forensic interviewer with the Children's Assessment Center ("CAC"), testified to the general nature and purpose of a forensic interview. Holcombe testified that the purpose of the interview is not to evaluate the truthfulness of the disclosure but to look for demeanor and behavioral details that give the interviewer an idea of what events might have occurred. Holcombe testified that John named appellant as the perpetrator of the abuse against him. Trial counsel did not object to Holcombe's testimony.

On cross examination Holcombe re-iterated that it was not her job to evaluate the validity of the evaluation. Also when John testified, on cross-examination defense counsel used John's statements to Holcombe to impeach John on inconsistencies between what John told Holcombe and his testimony at trial.

Relying on this court's opinion in *Merrit v. State*, 529 S.W.3d 549, 553 (Tex. App.—Houston [14th Dist.] pet. ref'd), appellant argues that Holcombe's testimony was not admissible, and its admission harmed appellant's substantial rights. In *Merrit*, this court held that any error in the admission of the forensic interviewer's hearsay description of the complainant's outcry statement was harmless when both the complainant and a law enforcement officer also testified about the sexual abuse. *Id.* at 556–57. Appellant argues that even though John testified about the abuse, no

one other than the forensic interviewer and John testified that appellant was the perpetrator of the abuse.

The improper admission of hearsay testimony under article 38.072 of the Code of Criminal Procedure is nonconstitutional error that is harmless unless the error affected the appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004); *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.). An error is harmless if we are reasonably assured that the error did not influence the verdict or had only a slight effect. *See Garcia*, 126 S.W.3d at 927; *Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Likewise, the improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *Merrit*, 529 S.W.3d at 556.

To demonstrate ineffective assistance based on a failure to object to evidence, an appellant must show that the trial court would have committed harmful error by overruling the objection had trial counsel objected. *Donald v. State*, 543 S.W.3d 466, 478 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Here, appellant has made no such showing. The inadmissible testimony was the identification of appellant as the perpetrator. John testified about multiple sexual assaults committed by appellant. Therefore, the same testimony came in without objection during John's testimony. Even if trial counsel had objected, the admission of Holcombe's hearsay testimony would have been harmless.

Appellant argues that the jury was affected by Holcombe's testimony as evidenced by their request for a synopsis of the CAC interview. Given that trial counsel heavily cross-examined John on statements made in the CAC interview, it is just as likely that counsel's cross-examination piqued the jury's interest in the

interview synopsis rather than Holcombe's testimony that John told her appellant was the perpetrator.

Plausible professional reasons exist for not objecting to hearsay. There may have been strategic reasons for not objecting in these instances, but we may not speculate on counsel's motives in the face of a silent record. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); *see also Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (declining to speculate on various failures to object to admission of evidence). In this case counsel may not have objected because he planned to use the interview notes to impeach John. We cannot say that defense counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. Therefore, we conclude that appellant has not satisfied the first prong of *Strickland* on his ineffective-assistance complaint related to the failure to object to allegedly inadmissible evidence. We overrule appellant's first issue.

## III. Trial counsel did not render ineffective assistance by failing to object to portions of prosecutor's argument during the guilt-innocence phase.

In his second and third issues appellant asserts allegations of ineffective assistance based on his counsel's failure to object to the prosecutor's comments in closing argument in the guilt-innocence phase.

### A. Prosecutor's argument about ticket trailer

In issue two appellant asserts his counsel rendered ineffective assistance by failing to object to the following argument during guilt-innocence:

> So then it happens another time in that ticket trailer on the property. He said they had to basically hurt themselves to break into this trailer. Again, not a detail you just fabricate and make up, and you certainly don't remember it five years later if it was fabricated and made up. Had to basically hurt themselves breaking into a trailer.

9

The law provides for, and presumes a fair trial, free from improper argument by the prosecuting attorney. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990). The failure to object to improper jury argument does not ordinarily reflect ineffective assistance. *Porter v. State*, 832 S.W.2d 383, 385 (Tex. App.—Houston [1st Dist.] 1992, no pet.). The approved areas of jury argument are (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

Appellant argues that the prosecutor's argument about the ticket trailer was outside the record and not supported by the evidence. The record reflects, however, the following testimony from John:

> Q. Okay. And then you said at some point he had gotten — Mr. Sabatini had gotten into a trailer on the property of Rio Bravo?
>
> A. Yeah. There was one — some sort of trailer that they had brought over there that they were selling like race tickets or something, and one night after Mark and Marcus had gone to bed, Mr. Sabatini brought me over there. That's where we ended up fooling around there.
>
> *****
>
> Q. And on this particular time, can you tell me what happened?
>
> A. Yeah. Mr.— we would enter the trailer, whatever.
>
> Q. Let me stop you right there. Was it nighttime or daytime?
>
> A. It was nighttime. There was nothing in the trailer. We couldn't actually see. We tripped over a few things ourselves trying to get things, but at that time, he undressed me and had me lay on my back. And that's when he sucked my dick, and then I guess kind of proceeded to climb on top and make out with me and other things like that.
>
> *****
>
> Q. And you said you guys hurt yourself climbing over some stuff to get in there?
>
> A. Yeah, it was very dark, it was nighttime, probably like 12:30, 1:00

10

a.m. We finally got the door open and then there was like a couple of chairs we tripped over and shit like that. And, yeah.

We analyze the closing argument in light of the entire record and not on the argument's isolated occurrence. *Smith v. State*, 483 S.W.3d 648, 657 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Appellant argues the prosecutor's argument about a ticket trailer and John hurting himself as they broke into the trailer impermissibly placed matters before the jury that were outside the record. We disagree. Wide latitude is allowed without limitation in drawing inferences from the evidence, so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); *Thomas v. State*, 445 S.W.3d 201, 211 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). It is a reasonable deduction from the evidence cited above that appellant and John broke into a trailer used to sell tickets and hurt themselves while tripping over things as they entered the trailer.

Because the State's argument about breaking into the ticket trailer was a reasonable deduction from the evidence, it was not improper. *See Torres v. State*, 92 S.W.3d 911, 922 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). The failure to object to argument that is not improper does not constitute ineffective assistance of counsel. *Davis v. State*, 830 S.W.2d 762, 766 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *see also Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (explaining that isolated failures to object to improper evidence generally do not constitute ineffective assistance of counsel). We overrule appellant's second issue.

**B. Prosecutor's comments that appellant was a "monster" and comparing the complainant to a "lamb to the slaughter"**

In appellant's third issue he asserts an allegation of ineffective assistance for trial counsel's failure to object to the following arguments of the prosecutor during guilt-innocence:

And Mr. Sabatini, he is not the victim here. He is not the easy target. [John] is the easy target. [John] is the one who is a lamb to the slaughter.

If you're sitting there thinking, How could someone do this, sit there so calm, cool, collected, and you sit there thinking that you will see a monster, that some — you're going — something telling, some facial expression, or maybe he should look a different way or something. No. What makes him the most terrifying monster of all is the monster hiding among us. He is a monster you won't think anything of if he is talking to your kid at Home Depot. He is a monster that you won't think anything of if he is at the same motorcross park. And that's what makes him so dangerous. If you are sitting there thinking that he could have done — couldn't have done this, then you underestimate him.

\*\*\*\*\*

I'm asking you to find this man guilty and to not be more people fooled by a monster hiding among us.

Appellant argues that the prosecutor's repeated references to appellant as a "monster" and John as a "lamb to the slaughter" were so prejudicial that counsel rendered ineffective assistance by failing to object to the argument.

In *Tompkins v. State*, the Court of Criminal Appeals addressed the propriety of a similar argument as the one presented here. 774 S.W.2d 195, 217–18 (Tex. Crim. App. 1987), *aff'd per curiam by an equally divided Court*, 490 U.S. 754 (1989). The prosecutor in *Tompkins* referred to the defendant as an "animal" during closing arguments of the sentencing phase. *Id*. at 217. There was an objection, an instruction to disregard, and a motion for mistrial, which was denied. *Id*. The *Tompkins* court disapproved of the prosecutor's remark but acknowledged there were past decisions of the Court of Criminal Appeals that found similar remarks proper deductions from the evidence and also decisions that reversed convictions for such remarks. *See id*. at 217–18. Accordingly, the court stated that "[w]hether such an argument will constitute reversible error, however, must be decided on an ad hoc basis." *Id*. at 217.

Relying on *Ponce v. State*, 299 S.W.3d 167, 175 (Tex. App.—Eastland 2009, no pet.), appellant argues that the State should not refer to the defendant by a derogatory term designed to subject him to personal abuse. In *Ponce*, a prosecution for aggravated sexual assault, the prosecutor in closing argument characterized the defendant as a "monster." *Id.* at 174. The court found the argument was improper but held the improper argument did not affect the defendant's substantial rights. *Id.* at 175. In so holding the court noted that "[t]here is a difference 'between harmless argument outside the record and arguments calculated to deprive the defendant of a fair and impartial trial.'" *Id.* (quoting *Stein v. State*, 492 S.W.2d 548, 552 (Tex. Crim. App. 1973)). The court held that the solitary mention of the word "monster" was not an argument calculated to deprive the defendant of a fair and impartial trial. *Id.*

Here, appellant attempts to distinguish *Ponce* in that in this case the prosecutor repeatedly referred to appellant as a "monster." Texas law has made it clear that context is highly important when deciding whether a closing argument is proper or improper. *See e.g. See Long v. State*, 823 S.W.2d 259, 270 (Tex. Crim. App. 1991) ("less human than any person with which the jury will ever have contact."); *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985) (referring to defendant as a "wolf"); *Easley v. State*, 454 S.W.2d 758, 761 (Tex. Crim. App. 1970) (referring to defendant as a "savage"); *Burns v. State*, 556 S.W.2d 270, 285 (Tex. Crim. App. 1977) (holding that a reference to the accused as an animal is not improper when the defendant had brutally tortured and murdered a 58-year-old man); *Ponce v. State*, 89 S.W.3d 110, 121 (Tex. App.—Corpus Christi 2002, no pet.) ("Dramatic epithets may be used against a defendant during closing arguments as proper deductions based upon the evidence and nature of the crime."); *Belton v. State*, 900 S.W.2d 886, 898 (Tex. App.—El Paso 1995, pet. ref'd) (reference to defendant as an animal not improper when the facts showed the accused broke into a family's home, terrorized

them, and ultimately shot three of them dead).

Other cases have upheld as supported by the evidence characterizations of the defendant as a "troublemaker," a "cold-blooded murderer," a "professional shoplifter," a "con man," as "heartless, cold-blooded, blood sucking," "a savage," a "beast," a "mad dog," and a "gangster." *See* GEORGE E. DIX & JOHN SCHMOLESKY, 43 TEX. PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 45:15 (3d ed. 2019) and cases cited therein. "Despite the reasonableness of an approach calling for appropriate decorum in courtroom argument, it is apparent that courts will allow a degree of latitude for intemperate characterizations when there is a basis for the label used in the evidence." *Id.*

In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.). The decision to refrain from objecting must be evaluated in light of the information available at the time. *Ex parte Carillo*, 687 S.W.2d 320, 324 (Tex. Crim. App. 1985). Given the varying nature of the courts' rulings on arguments such as the prosecutor's argument in this case, and a silent record with regard to counsel's trial strategy, we cannot conclude that counsel's failure to object to the prosecutor's use of the term "monster" or reference to the complainant as a "lamb to the slaughter" was conduct "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. The courts' precedents in this area are conflicting. Counsel could have believed that an objection would have been overruled, or even if sustained, may have unnecessarily emphasized the derogatory term. Appellant did not file a motion for

new trial in this case, and this is not a habeas corpus proceeding; accordingly, the record does not contain any express explanation for counsel's conduct. We overrule appellant's third issue.

## IV. Trial counsel did not render ineffective assistance by failing to object to portions of prosecutor's argument during the punishment phase.

In appellant's fourth issue he asserts his counsel rendered ineffective assistance by failing to object to the following argument:

> There is no guarantee he will be revoked if he violates. No guarantee. After this, this is out of your hands; and you have no control on whether or not he is revoked if he violates probation. Finally, if he is revoked, the Court shall proceed to dispose of the case as if there had been no community supervision not to exceed the term of years assessed by the jury.

At the beginning of the punishment hearing defense counsel read into the record a copy of general conditions of probation that could be imposed if the jury suspended appellant's sentence and granted probation. Appellant's brother also testified to appellant's character and his fitness for probation.

In closing argument defense counsel argued for probation including telling the jury that if appellant violated a condition of probation, "The Judge would issue an arrest warrant and can sentence him all the way up to 20 years in prison."

Appellant argues the prosecutor's argument was improper because a prosecutor cannot "infer that probation is never revoked when certain conditions are violated." We do not read the prosecutor's argument as making such an inference. The prosecutor's argument was a permissible response to defense counsel's argument explaining that the judge would issue an arrest warrant if appellant violated the conditions of probation.

A defendant cannot complain of improper prosecutorial argument if he invited

15

the argument. *Watts v. State*, 371 S.W.3d 448, 458 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Ripkowski v. State*, 61 S.W.3d 378, 393 (Tex. Crim. App. 2001)). "[I]f the defendant's counsel goes outside of the record in his argument, the prosecutor is then also permitted to go outside the record to respond." *Reynolds v. State*, 505 S.W.2d 265, 266 (Tex. Crim. App. 1974). The prosecutor may not, however, stray beyond the scope of the invitation. *Drew v. State*, 76 S.W.3d 436, 463 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Appellant argues that the prosecutor's argument was improper because the argument inferred that probation is never revoked when certain conditions are violated. Relying on *Carnathan v. State*, 478 S.W.2d 490, 494 (Tex. Crim. App. 1972) *overruled on other grounds by Blake v. State*, 971 S.W.2d 451, 456 n. 19 (Tex. Crim. App. 1998).and *Morris v. State*, 755 S.W.2d 505, 510 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) appellant argues the prosecutor's argument was an attempt to arouse the passion and prejudices of the jury. We find the arguments found to be improper in those cases distinguishable from the prosecutor's argument here.

In *Carnathan*, the court held that it is improper for a prosecutor to infer that probation is never revoked when certain conditions are violated. 478 S.W.3d at 493–94. In *Morris*, the court held it was improper for a prosecutor to argue probation is the equivalent of excusing an offender. 755 S.W.2d at 508–09. The argument in this case did not rise to the level of inferring that probation is never revoked when certain conditions are violated or that probation is the equivalent of excusing an offender.

In this case, defense counsel inferred that revocation of probation would be the inevitable consequence of any violations of a condition of probation. The prosecutor responded to appellant's argument about the consequences of violating a condition of probation pointing out that violation of a condition of probation was not a guarantee of revocation of probation. The prosecutor's argument therefore was a

16

permissible response to defense counsel's argument. *See Brown v. State*, 270 S.W.3d 564, 571 (Tex. Crim. App. 2008) (proper jury argument includes answering jury argument made by opposing counsel during the argument itself).

Inasmuch as we have determined the prosecutor's argument was not objectionable, we hold the failure to object to the argument does not constitute ineffective assistance of counsel. *See Davis v. State*, 830 S.W.2d at 766. We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's issues on appeal we affirm the trial court's judgment.


/s/ Jerry Zimmerer
   Justice


Panel consists of Justices Christopher, Zimmerer, and Spain.

Do Not Publish — Tex. R. App. P. 47.2(b).