ACCEPTED
01-14-00930-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/24/2015 3:33:56 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00930-CR

IN THE COURT OF APPEALS

FIRST JUDICIAL DISTRICT

HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

8/24/2015 3:33:56 PM

CHRISTOPHER A. PRINE
Clerk

_____

BRIDGET RENAE MILLER,
                    Appellant

VS.

THE STATE OF TEXAS,
                    Appellee

_____

APPELLANT'S BRIEF SPECIFYING ERROR OF WHICH

APPELLANT COMPLAINS ON APPEAL

APPEALED FROM THE 239TH JUDICIAL DISTRICT COURT

OF BRAZORIA COUNTY, TEXAS

IN CAUSE NUMBER 74,232

Oral Arguments are <u>Not</u> Requested

John J. Davis
P.O. Box 787
205 N. Chenango
Angleton, Texas 77516-0787
SBN 05515500
Telephone: (979) 849-4362
Email: d.attorne@sbcglobal.net

ATTORNEY FOR APPELLANT

# IDENTITY OF PARTIES AND COUNSEL

## Attorney for Appellant, BRIDGET RENAE MILLER

### Trial Counsel:
Dominique Gerard
613 W. Mulberry
Angleton, Texas 77515
Telephone: (979) 549-0999
Facsimile:
SBN: 07813100

Sallie Godfrey
613 W. Mulberry
Angleton, Texas 77515
 Telephone: (281) 802-1743
Facsimile:
SBN: 24032231

### Appellate Counsel:
John J. Davis
P.O. Box 787
205 N. Chenango
Angleton, Texas 77515
Telephone: (979) 849-4362
SBN: 05515500
*d.attorne@sbcglobal.net*

### Attorneys for the State of Texas:
Jeri Yenne
Criminal District Attorney
Brazoria County Courthouse
111 East Locust, Suite 408A
Telephone: (979) 864-1230
Facsimile: (979) 864-8914

### Trial Assistants:
Travis Townsend   (SBN 24048843)
Lily Martinez    (SBN 24045599)

### Appellate Assistant:
David Bosserman

### Trial Court
Judge Patrick Sebesta
239th Judicial District Court
Brazoria County Courthouse
111 East Locust, Room 310A
Angleton, Texas 77515
Telephone: (979) 864-1256
Facsimile: (979) 864-1056

# TABLE OF CONTENTS

Identity of Parties and Counsel ........................ ii

Table of Contents ..................................... iii

Index of Authorities .................................. v

Statement of the Case ................................. vi

Citations to the Record ............................... vi

Issues Presented ...................................... vii

Statement of Facts .................................... 2

**POINT OF ERROR ONE** .................................... 9

THE EVIDENCE IS INSUFFICIENT TO SUPPORT A JURY CHARGE OR JURY VERDICT ON INJURY TO A CHILD BY FAILING TO SEEK AND/OR PROVIDE TIMELY MEDICAL CARE AS ALLEGED IN PARAGRAPH FIVE OF THE INDICTMENT.

    Relevant Facts .................................. 9

    Summary of Argument ............................. 12

    Argument and Authorities ........................ 14

**POINT OF ERROR TWO** .................................... 18

BECAUSE PARAGRAPH FIVE OF THE INDICTMENT WAS SUBMITTED TO THE JURY IN THE DISJUNCTIVE, APPELLANT WAS DENIED THE RIGHT TO A UNANIMOUS JURY VERDICT.

    Relevant Facts .................................. 18

    Summary of Argument ............................. 19

    Argument and Authorities ........................ 21

    Egregious Harm Analysis ......................... 24

**POINT OF ERROR THREE** .................................... 31

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTIONS TO THE STATE'S ARGUMENTATIVE SIDEBAR COMMENTS.

Relevant Facts .................................... 31

Summary of Argument ............................. 32

Argument and Authorities ......................... 33

Harm Analysis .................................... 34

Prayer for Relief .................................... 37

Certificate of Service ............................... 38

# INDEX OF AUTHORITIES

**CASES:**

<u>Arizona</u> <u>v</u>. <u>Fulminante</u>, 111 S.Ct. 1246 (1991)......... 36,37

<u>Brokenberry</u> <u>v</u>. <u>State</u>, 853 S.W.2d 145
    (Tex.App.-Houston [14th Dist] 1993)............. 33,34
    37

<u>Brooks</u> <u>v</u>. <u>State</u>, 323 S.W.3d 893 (Tex.Cr.App. 2010)... 15,17

<u>Coble</u> <u>v</u>. <u>State</u>, 330 S.W.3d 253 (Tex.Cr.App. 2010).... 34

<u>Cruz</u> <u>v</u>. <u>State</u>, 122 S.W.3d 309
    (Tex.App.-Houston [1st Dist] 2003)............. 34

<u>Gonzalez</u> <u>Soto</u> <u>v</u>. <u>State</u>, 267 S.W.3d 327
    (Tex.App.-Corpus Christi 2008).................. 23,24
    30,31

<u>Guevara</u> <u>v</u>. <u>State</u>, 152 S.W.3d 45 (Tex.Cr.App. 2004)... 15,17

<u>In</u> <u>re</u> <u>W.G.W.</u>, 812 S.W.2d 409
    (Tex.App.-Houston [1st Dist] 1991)............. 33,34
    37

<u>In</u> <u>re</u> <u>Winship</u>, 90 S.Ct. 1068 (1970)................. 14,17

<u>Jackson</u> <u>v</u>. <u>Virginia</u>, 99 S.Ct. 2781 (1979)........... 14,17

<u>Jimenez</u> <u>v</u>. <u>State</u>, 240 S.W.3d 384
    (Tex.App.-Austin 2007)......................... 34,37

<u>Johnson</u> <u>v</u>. <u>State</u>, 43 S.W.3d 1 (Tex.Cr.App. 2001)..... 34,37

<u>Jourdan</u> <u>v</u>. <u>State</u>, 428 S.W.3d 86 (Tex.Cr.App. 2014)... 29

<u>Landrian</u> <u>v</u>. <u>State</u>, 268 S.W.3d 532 (Tex.Cr.App. 2008). 21-23

<u>Martinez</u> <u>v</u>. <u>State</u>, 190 S.W.3d 254
    (Tex.App.-Houston [1st Dist] 2006)............. 23,24

<u>Morales</u> <u>v</u>. <u>State</u>, 32 S.W.3d 862 (Tex.Cr.App. 2000)... 35

<u>Ngo</u> <u>v</u>. <u>State</u>, 175 S.W.3d 738 (Tex.Cr.App. 2005)...... 21-24
    29-30

<u>Stein</u> <u>v</u>. <u>State</u>, 492 S.W.2d 548 (Tex.Cr.App. 1973).... 34

<u>Stuhler</u> <u>v</u>. <u>State</u>, 218 S.W.3d 706 (Tex.Cr.App. 2007)..15,21-24
    29-31

<u>Thompson</u> <u>v</u>. <u>Louisville</u>, 80 S.Ct. 624 (1960)......... 14

<u>Vick</u> <u>v</u>. <u>State</u>, 991 S.W.2d 830 (Tex.Cr.App. 1999)..... 22

Warner v. State, 245 S.W.3d 458 (Tex.Cr.App. 2008)...    24

**CONSTITUTION:**
Article V, Section 13 Texas Constitution.............    21

Fourteenth Amendment to United States Constitution...    14

**RULES:**
Rule 44.2 Texas Rules of Appellate Procedure........    34

Rule 613 Texas Rules of Evidence....................    35

## STATEMENT OF THE CASE

Appellant was charged by indictment in five paragraphs with the offense of Injury to a Child (CR p.751-752; V.4 p.199-202). Appellant entered a plea of "not guilty" before a jury (V.4 p.202). Appellant was found guilty of Injury to a Child (V.9 p.89). Punishment was assessed by the jury at ninety-nine (99) years confinement in the Institutional Division of T.D.C.J. (V.9 p.152). No fine was assessed (V.9 p.153).

## CITATIONS TO THE RECORD

The following abbreviations will be used to cite the record:

**CR.**   refers to Clerk's record.

**V.**   refers to volume of the Court Reporter's Statement of Facts where the evidence referred to may be found.

**p.**   refers to the page or pages where the cited material may be found.

vi

## ISSUES PRESENTED

**POINT OF ERROR ONE:** .................................... 9

    THE EVIDENCE IS INSUFFICIENT TO SUPPORT A JURY CHARGE OR JURY VERDICT ON INJURY TO A CHILD BY FAILING TO SEEK AND/OR PROVIDE TIMELY MEDICAL CARE AS ALLEGED IN PARAGRAPH FIVE OF THE INDICTMENT.

**POINT OF ERROR TWO** .................................... 18

    BECAUSE PARAGRAPH FIVE OF THE INDICTMENT WAS SUBMITTED TO THE JURY IN THE DISJUNCTIVE, APPELLANT WAS DENIED THE RIGHT TO A UNANIMOUS JURY VERDICT.

**POINT OF ERROR THREE** .................................... 31

    THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTIONS TO THE STATE'S ARGUMENTATIVE SIDEBAR COMMENTS.

IN THE COURT OF APPEALS

FIRST JUDICIAL DISTRICT

HOUSTON, TEXAS

_____

BRIDGET RENAE MILLER,
                    Appellant

VS.                                          NUMBER 01-14-00930-CR

THE STATE OF TEXAS,
                    Appellee

_____

APPELLANT'S BRIEF SPECIFYING ERROR OF WHICH

APPELLANT COMPLAINS ON APPEAL


APPEALED FROM THE 239TH JUDICIAL DISTRICT COURT

OF BRAZORIA COUNTY, TEXAS

IN CAUSE NUMBER 74,232


TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, BRIDGET RENAE MILLER, hereafter referred to as Appellant, and respectfully submits this his brief specifying error of which Appellant complains on appeal. Pursuant to the Texas Rules of Appellate Procedure, the Appellant would show through his attorney the following points of error of which he wishes to complain:

## STATEMENT OF FACTS

For the sake of brevity and clarity in this brief, the deceased child will hereafter be referred to as "C\W" or "child". C/W's mother, Sandra Vela, will be referred to as "mother". C/W's father, Clifton Floyd Tarrant, will be referred to as "father". Defendant/Appellant Bridget Miller, will be referred to as "appellant".

The name of the deceased child in this case is Clifton Floyd Tarrant II, also called "Little Cliff", who was born May 29, 2008 (V.5 p.43; see V.10 SX-4). Sandra Vela was the child's mother and Clifton Floyd Tarrant was the child's father (V.5 p.41; V.10 SX-4). C/W's mother and father separated in April, 2011 (V.5 p.48). At first C/W stayed with his mother but at the end of August, 2011, he went to stay with his father (V.5 p.48). The mother and father did not divorce until September, 2014 (V.5 p.73).

Appellant and the father were girlfriend and boyfriend (V.7 p.38). Appellant began a relationship with the father sometime after the mother and father separated (V.5 p.52) and she started living with the father and the child off and on three to five months prior to June 20, 2012 (V.5 p.74; V.6 p.134, V.7 p.153, 160). At 7:15 a.m. on June 20, 2012, C/W arrived at the emergency room of Brazosport Memorial Hospital in the arms of his father (V.5 p.187-189, 206). He was unresponsive (V.5 p.201). Dr. Corey Anderson, the emergency room physician, diagnosed C/W as having massive head and

2

brain injuries (V.6 p.13). The father told nurses that C/W fell in the bathtub and hit his head (V.5 p.192-193, 195, 208). C/W was later Life Flighted to Hermann Hospital's Department of Neurosurgery in Houston (V.6 p.15, 17-18).

INTERVIEWS OF APPELLANT

Over the next five weeks prior to C/W's death, Appellant related the events surrounding the child's injuries to no less than five investigators through six interviews. They were as follows:

1. Patrol Officer Maricruz Ramos, Lake Jackson Police Department, at Brazosport Hospital Emergency Room on June 20, 2012 (V.7 p.15-17);

2. Patrol Officer Slade Moran, Lake Jackson Police Department, at Brazosport Hospital Emergency Room on June 20, 2012. Slade was unable to identify Appellant in court (V.7 p.31-34).

3. Robert Turner, Detective Sergeant, Lake Jackson Police Department, at Brazosport Hospital Emergency Room on June 20, 2012 (V.7 p.48-49) and at Hermann Hospital on the same day (V.7 p.51-54);

4. Haley Deem, Child Protective Services investigator, at Hermann Hospital on June 20, 2012 (V.7 p.103-105).

5. Eric Holmes, Child Protective Services supervisor, in a conference room at Hermann Hospital I.C.U. (V.6 p.113, 121).

The interviewers testified that their recollection of

3

the statements made by Appellant were as follows:

C/W's father went to work about 6:30 a.m. (V.7 p.48, 52, 113). After the father left, she received a call from him asking her to see if his work badge had fallen in the yard (V.7 p.103). She checked and came back in (V.7 p.103). She then checked on C/W, smelled poop and noticed that C/W had pooped his pants while he was sleeping (V.6 p.121; V.7 p.15, 48, 52, 103). The stool was dry on his body (V.7 p.16, 32, 52). She took him to the bathroom, cleaned him and placed him in the shower (V.6 p.121; V.7 p.16, 20-21, 32, 48, 52, 103). Appellant checked on C/W twice and he was okay (V.7 p.104). Appellant left him in the shower to soak and went to make coffee (V.6 p.121; V.7 p.16, 20-21, 32-33, 48, 52, 104). When she heard a thud or thump and a cry, she ran back to the bathroom (V.6 p.121; V.7 p.16, 33, 48, 52, 104). C/W was laying in the bottom of the tub with his feet closest to the drain (V.7 p.33, 49, 52). He had a blank stare on his face, looked stunned, and wouldn't respond (V.7 p.16, 49, 53, 104). Appellant felt a bump on his head (V.7 p.16, 33, 49, 53). Appellant called C/W's father, told him he needed to come home and waited till he arrived (V.7 p.17, 33-34, 49, 53-54, 104). The father returned about 7:10 a.m. (V.6 p.105, 113). Appellant and the father took C/W to the hospital emergency room (V.7 p.17, 34, 54, 105).

Although there were some inconsistencies and variations, Appellant related the same basic facts throughout these

4

interviews. When Detective Turner went to the house where the incident occurred, he found fecal matter in C/W's pants on the floor of the bathroom (V.7 p.55, 57, 59-60, 64, 84).

## APPELLANT'S TRIAL TESTIMONY

Appellant also testified before a grandjury (V.7 p.215-216) and at trial (V.7 p.152-235; V.8 p.7-53). At trial, Appellant related the same basic facts. Her trial testimony relating to the events of the morning of June 20, 2012, is set out below and supplemented with citations to where the same basic facts may be found in the interviews:

1. C/W's father went to work about 6:25 a.m. (V.7 p.195; see p.48, 52, 113).

2. As passed C/W's room, she smelled poop (V.7 p.195; see V.6 p.121; V.7 p.15, 48, 52, 103).

3. Appellant woke C/W up and took him to the shower (V.7 p.195; see V.6 p.121; V.7 p.16, 20-21, 32, 48, 52, 103).

4. C/W had a big ball of poop in his pants which she held until she got him in the shower (V.7 p.195).

5. During this period, the father called on and off because he couldn't find his work badge. Father thought he might have dropped it in the yard while moving. Appellant looked, didn't find it, and came back in (V.7 p.196; see p.103). This call came at 6:52 a.m. (V.8 p.28).

6. Appellant checked on C/W again twice and he was okay (V.7 p.196-197; see p.104).

7. Appellant went to the kitchen to make coffee (V.7 p.197;

see V.6 p.121; V.7 p.16, 20-21, 32-33, 48, 52, 104).

8. When she heard a thud or thump and a cry, she ran back to the bathroom (V.7 p.197; see V.6 p.121; V.7 p.16, 33, 48, 52, 104).

9. C/W was laying on his back with his feet closest to the drain (V.7 p.198; see p.33, 49, 52).

10. C/W had a bump on his head (V.7 p.198; see p.16, 33, 49, 53).

11. Appellant tried to talk to C/W but he wouldn't answer. C/W moaned but didn't look at Appellant. He looked like he knocked himself out (V.7 p.198; see p.16, 49, 53, 104).

12. Appellant called C/W's father at 7:03 a.m. and told him he needed to come home (V.7 p.198-199; see p.17, 33-34, 49, 53-54, 104; (V.8 p.36).

13. At 7:08 a.m., the father called Appellant back (V.8 p.36). Appellant was crying (V.7 p.199). The father told her not to drive that he would pick them up (V.7 p.199). Appellant did not want to drive because she would have to put C/W down (V.7 p.199).

14. Appellant did not think C/W's injury was life-threatening (V.7 p.199).

DOCTOR FINDINGS & OPINIONS

The State called five doctors including the medical examiner to discredit Appellant's version of how C/W sustained his injuries:

Dr. Corey Anderson, emergency room physician Brazosport Hospital, diagnosed C/W as having massive head and brain injuries and was having trouble breathing (V.6 p.13). A CT scan confirmed Dr. Anderson's diagnosis, and arrangements were made to transfer C/W to Hermann Hospital (V.6 p.16). Anderson testified that C/W's injuries were "absolutely not" consistent with a slip-and-fall in a bathtub (V.6 p.49). He opined that it is unlikely that a standing ground-level fall in a bathtub would produce such significant injuries (V.6 p.50, 67-70).

Dr. Rebecca Girardet, associate professor of pediatrics and specialist in child abuse at the University of Texas Medical School, testified that she consulted with Hermann Hospital on C/W's case looking for signs of abuse and neglect (V.6 p.143). Her investigation included an exam of C/W after he got out of surgery (V.6 p.143-145). She noted his head was "grossly swollen" due to trauma (V.6 p.145-146). The CT scan from Brazosport Hospital showed a lot of subdural hemorrhage with active bleeding and swelling of the brain (V.6 p.146-147). The ophthalmic exam showed hemorrhages in the back of both eyes and a shearing of the layers of the right retina (V.6 p.150). Dr. Girardet opined that C/W's injuries were not consistent with a routine household injury or a slip-and-fall in the bathtub but could have resulted from a blow to the head (V.6 p.155).

Dr. Judianne Kellaway, ophthalmologist at the University

7

of Texas Medical School, examined C/W and found multiple intraretinal hemorrhages throughout the back of both eyes and retinoschisis in the right eye (V.6 p.202-203). Retinoschisis is a shearing or separation of the three layers of the retina (V.6 p.181-182). It does not result from a direct impact (V.6 p.204) but is the result of a severe shaking and is indicative of abusive head trauma or shaken baby (V.6 p.197). Retinoschisis cannot be caused by a slip-and-fall or by slapping (V.6 p.211, 216). Dr. Kellaway opined that C/W's eye injuries could only be caused by a severe and violent shaking (V.6 p.203, 211-212).

On the State's rebuttal, Dr. Marcella Donaruma, a child abuse pediatrician for the Baylor College of Medicine at Texas Children's Hospital, testified that she reviewed C/W's medical records from Dr. Vavich at Parking Way Pediatrics, Brazosport Hospital, Hermann Children's Hospital, and the autopsy report (V.8 p.67, 77). It was her opinion that C/W was "most likely" the victim of fatal physical abuse and that "trauma to the head was responsible for his death (V.8 p.71). She testified that the injuries could have been caused by shaking the child, striking the head of the child with an unknown object or causing the head of the child to strike an unknown object (V.8 p.79). She opined that the injury occurred more than one (1) hour and less than six (6) hours from the CT scan which was performed at 7:53 a.m. (V.8 p.72-74). She testified that C/W would not have been able to walk

8

or talk after suffering such massive head trauma (V.8 p.79). It was her opinion that there was "no way" the child could have sustained these injuries if he slipped and fell in the bathtub (V.8 p.76-77).

C/W died at Herman Hospital on July 27, 2012, after life support was removed (V.5 p.68-69; V.10 SX 16; V.15 SX 43), five weeks (37 days) after he was first seen at Brazosport Hospital (V.6 p.84, 98). The medical examiner opined that the manner of death was a homicide and the cause of death was blunt trauma of the head (V.6 p.95-96; see also V.5 p.69-70; V.10 SX 16).

## POINT OF ERROR ONE

**THE EVIDENCE IS INSUFFICIENT TO SUPPORT A JURY CHARGE OR JURY VERDICT ON INJURY TO A CHILD BY FAILING TO SEEK AND/OR PROVIDE TIMELY MEDICAL CARE AS ALLEGED IN PARAGRAPH FIVE OF THE INDICTMENT.**

### RELEVANT FACTS

Paragraph five of the indictment alleges that Appellant caused serious bodily injury to C/W by omission "by failing to seek and/or provide timely medical care" (CR p.752; V.4 p.201-202). At guilt-innocence, the court charged the jury on this theory of culpability (CR p.929-930; V.9 p.14-15).

C/W's father went to work about 6:30 a.m. (V.7 p.48, 52, 113). After the father left, she received a call from him asking her to see if his work badge had fallen in the yard (V.7 p.103). This called came at 6:52 a.m. (V.8 p.28). At

9

6:55 a.m., C/W's father signed in for work at Dow Chemical (V.7 p.91). When Appellant found C/W injured in the bathtub she called C/W's father and told him he needed to come home (V.7 p.17, 33-34, 49, 53-54, 104). The father received this call from Appellant who was hysterical at 7:03 a.m. (V.7 p.91-92). The Father called Appellant back to tell her not to drive at 7:08 a.m. (V.7 p.92). He arrived home at about 7:10 a.m. (V.6 p.105, 113) and took C/W and Appellant to the hospital emergency room (V.7 p.17, 34, 54, 105). They arrived at the emergency room at 7:15 a.m. (V.5 p.187, 205). Appellant testified that they arrived at the hospital in under 30 minutes from the time she found him injured (V.7 p.199). Detective Robert Turner opined that paramedics could not have responded from the fire station to the house, done their evaluation, and transported C/W to the hospital any faster than it took Appellant's husband to drive home, pick them up, and take them to the emergency room (V.7 p.94). There was no evidence to support a finding that C/W's injury was caused by or exacerbated by any delay in getting him to the emergency room. The evidence is insufficient to show that Appellant failed to seek and/or provide timely medical care or that this led to, caused, or exacerbated C/W's injury.

However, the prosecutor used the allegations in Paragraph Five to urge jury conviction based on a completely different theory which was likewise not supported by the evidence. The State' third witness was Aimee Mitchell, friend of Appellant.

10

Mitchell was using phone number 832-508-8992 (V.5 p.141). Mitchell identified Appellant's number as 979-824-8273 (V.5 p.146). Using phone records, the State showed that on the morning of June 20, 2012, Mitchell sent text messages to Appellant at 6:01, 6:05, 6:29, 6:32, 6:41, 6:50, and 6:52 a.m. (V.5 p.146-148). During this same period Appellant sent text messages to her at 6:02, 6:27, 6:28, 6:29, 6:40, 6:50, and 6:51 a.m. (V.5 p.146-148). Noting the texts sent by Appellant at 6:02, 6:27 and 6:28, Mitchell testified that Appellant said "somebody was going to the hospital and she might need a place to stay because they were going to be in the hospital in Houston." (V.5 p.151). The prosecutor then attempted to use the text from Appellant at 6:02 to establish the time at which Appellant told Mitchell that somebody needs to go to the hospital (V.5 p.153). On cross examination, however, Mitchell admitted she did not remember why she sent the first text to Appellant at 6:01 a.m. (V.5 p.162-163) nor could she recall what time she received the message asking about possibly staying at Mitchell's house in Houston because someone was going to the hospital (V.5 p.169, 175).

On final jury argument, the State laid out the preposterous theory that C/W was not injured between 6:30 and 7:15 a.m. but, in fact, was injured prior to 6:01 a.m. before the father left for work (V.9 p.56-57). To make this theory work, the State relied on the testimony of Aimee Mitchell that Appellant sent a text message at 6:02 a.m. saying she

11

would need a place to stay because someone was going to the hospital (V.9 p.57). However, Mitchell admitted she did not know when she received this text. So 6:01 a.m. is pure conjecture on the part of the prosecutor and is not supported by the evidence.

In addition, the second and more substantial problem with the prosecutor's theory is that uncontroverted evidence shows that C/W and Appellant did not arrive at Brazosport Hospital until 7:15 a.m. on June 20, 2012 (V.5 p.187, 205). The decision to send C/W to Houston was not made until after he was seen by the emergency room doctor and was sent for a CT scan (see V.6 p.15-16). Thus, it is impossible for Appellant to have known C/W would be sent to Houston or that she might need a place to stay in Houston until some time after 7:15 a.m., well after her last text message to Mitchell at 6:51 a.m. (V.5 p.146-148). There is simply no support in the evidence for Paragraph 5 of the indictment.

## SUMMARY OF ARGUMENT

Paragraph five of the indictment alleges that Appellant caused serious bodily injury to C/W by omission "by failing to seek and/or provide timely medical care" and the court charged the jury on this theory of culpability at the guilt phase of the trial. The evidence strongly supports a finding that the child was injured sometime between 6:52 a.m. when the father called Appellant regarding his lost work badge and 7:03 a.m. when Appellant called the father in hysterics

12

saying C/W had been injured and that he needed to come home immediately. The father immediately went home and took C/W and Appellant to the hospital emergency room where they arrived at 7:15 a.m. There was no credible evidence to suggest Appellant failed to seek immediate medical care. Likewise, there was absolutely no evidence that any delay in seeking medical care caused or exacerbated the serious bodily injury which had already been sustained by the child.

However, the prosecutor argued that C/W was not injured between 6:30 and 7:15 a.m. but, in fact, was injured prior to 6:01 a.m. before the father left for work. To make this theory work, the prosecutor relied on the testimony of Aimee Mitchell that Appellant sent a text message at 6:02 a.m. saying she would need a place to stay in Houston because someone was going to the hospital. However, Mitchell admitted she did not know when she received the text from Appellant regarding someone going to the hospital and no one knew that C/W would be sent to the Hospital in Houston until after 7:15 a.m. when C/W was examined at the emergency room and a CT scan was performed. This occurred well after Appellant's last text to Mitchell at 6:51 a.m. This theory constituted pure conjecture on the part of the prosecutor and the evidence not only failed to support it, the evidence disproved it. There is simply no support in the evidence for Paragraph 5 of the indictment.

13

## ARGUMENT AND AUTHORITIES

The standard of review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979). The issue in *Jackson* was the distinction between a review for "evidentiary sufficiency" and the "no evidence" doctrine set out in *Thompson v. Louisville*, 80 S.Ct. 624, 628 -629 (1960). *Jackson*, 99 S.Ct. at 2786. The "no evidence" doctrine addresses cases where the record is totally devoid of any relevant evidence to support a crucial element of the offense charged. *Thompson*, 80 S.Ct. at 628.

In addressing evidentiary sufficiency, the *Jackson* court noted that the Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Jackson* 99 S.Ct. at 2787; *In re Winship*, 90 S.Ct. 1068, 1073 (1970). Requiring proof beyond a reasonable doubt of every fact necessary to constitute the crime reduces the risk of factual error "by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused." *Jackson*, 99 S.Ct. at 2787. Thus, proof beyond a reasonable doubt goes beyond a mere "modicum" of evidence which cannot by itself rationally support a conviction beyond

14

a reasonable doubt. *Jackson*, 99 S.Ct. at 2789.

In Texas, *Jackson v. Virginia* is the only standard a reviewing court should apply in determining whether evidence is sufficient to support each element of an offense. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Cr.App. 2010). But *Brooks* emphasized that the State is required to prove each element beyond a reasonable doubt. *Brooks*, 323 S.W.3d 912. Therefore if, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt as to the defendant's guilt, due process requires the appellate court to reverse and order a judgment of acquittal. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Cr.App. 2004).

Injury to a child is a "result of conduct offense." *Stuhler v. State*, 218 S.W.3d 706, 718 (Tex.Cr.App. 2007). The gravamen of the offense is the resulting injury the conduct caused, not the conduct that caused the injury. *Stuhler* at 718. Paragraph Five of the indictment alleges an omission in failing to seek medical care. Any such omission would, of necessity, have occurred subsequent to C/W's injury and did not cause the injury. This is a completely different transaction from the act which caused the injury. Thus, Paragraph Five alleges a different and distinct offense from those alleged in Paragraphs One through Four (see Point of Error Two). The uncontroverted evidence shows that this child was injured sometime after C/W's father went to work about 6:30 a.m. The father signed in for work at Dow Chemical at

15

6:55 a.m. C/W's injuries were totally incapacitating. When Appellant found that C/W was injured, she called C/W's father in hysterics and told him he needed to come home. The father received this call at 7:03 a.m. He immediately drove home, picked up Appellant and the child, and drove them to the emergency room where they arrived at 7:15 a.m., twelve (12) minutes after Appellant called him and told him to come home. As Lake Jackson Detective Robert Turner opined, E.M.S. could not have done any better.

On final jury argument, the State laid out the preposterous theory that C/W was not injured between 6:30 and 7:15 but, in fact, was injured prior to 6:01 prior to the father leaving for work. Barely a scintilla of evidence supported this argument and the allegations set out in Paragraph Five. Using phone records, the State relied on an exchange of text messages between Aimee Mitchell and Appellant which evidently occurred between 6:01 a.m. and 6:52 a.m. The content of the messages was not shown. Noting the texts sent by Appellant at 6:02, 6:27 and 6:28, Mitchell testified she thought Appellant told her "somebody was going to the hospital and she might need a place to stay because they were going to be in the hospital in Houston." On cross, however, Mitchell admitted she did not remember why she sent the first text to Appellant at 6:01 a.m. nor could she recall what time she received the message asking about possibly staying at Mitchell's house in Houston because someone was

16

going to the hospital. C/W did not arrive at Brazosport Hospital until 7:15 a.m. and the decision to send him to Houston was not made until he was examined and a CT scan was performed, well after 7:15 a.m. On the thin thread of an unrecalled text message, the prosecutor claimed the injury occurred prior to 6:01 a.m. This was his evidentiary support for Paragraph Five that Appellant was guilty by omission in failing to seek and/or provide timely medical care. This is not even a scintilla of evidence, and does not rise to the level of a mere "modicum" of evidence which cannot by itself rationally support a conviction beyond a reasonable doubt. *Jackson*, 99 S.Ct. at 2789. The evidence does not prove beyond a reasonable doubt that Appellant or the father failed to seek and/or provide timely medical care or that any such failure caused serious bodily injury to C/W or in any way exacerbated C/W's injury. Any such failure to seek medical care would have occurred after C/W sustained the serious bodily injury. The State failed to prove each element of Paragraph Five beyond a reasonable doubt. *Brooks*, 323 S.W.3d 912; *Jackson* 99 S.Ct. at 2787; *In re Winship*, 90 S.Ct. 1068, 1073 (1970). A rational jury would necessarily entertain a reasonable doubt as to Appellant's guilt regarding Paragraph Five of the indictment and due process requires the appellate court to reverse and order a judgment of acquittal as to Paragraph Five of the indictment. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Cr.App. 2004).

17

## POINT OF ERROR TWO

**BECAUSE PARAGRAPH FIVE OF THE INDICTMENT WAS SUBMITTED TO THE JURY IN THE DISJUNCTIVE, APPELLANT WAS DENIED THE RIGHT TO A UNANIMOUS JURY VERDICT.**

### RELEVANT FACTS

The indictment in this cause alleges the offense of Injury to a Child in five paragraphs (CR p.751-752; V.4 p. 199-202). Paragraphs one through four alleged that Appellant caused serious bodily to C/W by (1) causing C/W's head to strike an unknown object; (2) causing an unknown object to strike C/W's head; (3) by shaking C/W; and (4) by causing trauma to C/W's head, the exact manner and means unknown (CR p.751; V.4 p.200-201). Paragraph Five of the indictment alleges that Appellant caused serious bodily injury to C/W by omission "by failing to seek and/or provide timely medical care...." (CR p.752; V.4 p.201-202).

The evidence supporting Paragraphs One through Four was mainly provided by Appellant's statements to investigators, her trial testimony, and by the five medical doctors who testified to the serious bodily injury sustained by C/W and to the fact that, in their opinion, these injuries could not have been caused by the slip and fall described by Appellant. (V.5 p.69-70; V.6 p.49-50, 67-70, 95-96, 155, 203, 211-212; V.8 p.76-77; V.10 SX 16; See the Statement of Facts above). However, as set out in Point of Error One which is here incorporated by reference, the evidence supporting Paragraph

18

Five was insufficient. The evidence was insufficient in two ways: (1) it failed to show that Appellant or the father failed to seek and/or provide timely medical care and (2) it failed to show that any such omission caused, aided, enhanced or in any way exacerbated C/W's serious bodily injury.

At the guilt phase of the trial, the trial court charged the jury in the alternative with regard to each of the application paragraphs for the five respective indictment paragraphs (CR p.926-930; V.9 p.11-15) and the verdict forms only allowed for a general verdict of "guilty" or "not guilty" as to the whole (CR p.934-935; V.9 p.19-20).

## SUMMARY OF ARGUMENT

The Texas Constitution requires a unanimous jury verdict in all felony cases. Injury to a child is a "result of conduct offense." The gravamen of the offense is the resulting injury the conduct caused, not the conduct that caused the injury. Paragraphs One through Four of the indictment and application paragraphs of the jury charge allege four different manner and means of causing C/W's injury. The jury is not required to unanimously agree upon a single manner and means.

Paragraph Five of the indictment and jury charge allege that Appellant caused serious bodily injury to C/W by omission "by failing to seek and/or provide timely medical care...." This alleges a different incident and distinct criminal conduct from the incident and conduct alleged in

19

Paragraphs One through Four. Paragraph Five alleges an omission after the incident and conduct which caused the serious bodily injury were complete. As set out in Point of Error One, there is no evidence in the record supporting the allegation that failure to promptly seek medical care caused C/W's injury or added to it or exacerbated the injury C/W had already sustained. Furthermore, any conduct in failing to promptly seek medical care occurred after C/W's injury was inflicted, constitutes distinct criminal conduct and is a completely different incident. If disjunctive paragraphs contain different criminal incidents and conduct, then a jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees that the defendant committed that conduct. The trial court committed jury charge error when it submitted Paragraph 5 in the disjunctive with Paragraphs One through Four without requiring the jury to reach a unanimous with regard to Paragraph                                    Five.

That Appellant suffered egregious harm is amply demonstrated in the record. The State spent a considerable time in its insistence during voir dire and jury argument that unanimity was not required. The State also made a forceful and extensive argument urging the jury to find Appellant guilty of Paragraph Five. Nowhere in the jury charge or arguments of counsel was the jury ever informed that it could (1) unanimously agree on one or more of the

20

paragraphs numbered one through four but (2) must unanimously agree on Paragraph Five. Read as a whole, the charge misled the jury into believing that only its ultimate verdict of "guilty" need be unanimous. Appellant's right to a unanimous jury verdict was violated and this violation caused egregious harm to his right to a fair and impartial trial.

## ARGUMENT AND AUTHORITIES

Article V, Section 13 of the Texas Constitution requires a unanimous jury verdict in all felony cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Cr.App. 2005); *Stuhler v. State*, 218 S.W.3d 706, 716 (Tex.Cr.App. 2007). Jury unanimity requires that the jury agree upon a single and discrete incident that would constitute the commission of the offense alleged. *Stuhler* at 717. "What matters is that the conduct (whatever it may be) is done with the required culpability to effect the result the Legislature specified." *Landrian v. State*, 268 S.W.3d 532, 537 (Tex.Cr.App. 2008).

Injury to a child is a "result of conduct offense." *Stuhler* at 718. The gravamen of the offense is the resulting injury caused by the conduct, not the conduct that caused the injury. *Stuhler* at 718. Paragraphs One through Four allege that Appellant intentionally or knowingly caused serious bodily injury to the child by various acts and an act unknown, in other words, by various manner and means. Using the eighth-grade grammar exercise to determine the elements of the offense which require a unanimous verdict, "Appellant"

21

is the subject, "caused" is the main verb, and "bodily injury" is the direct object. *Stuhler* at 718; see *Landrian* at 537. The Legislature has thus defined Injury to a Child according to the kind and degree of injury that results. *Stuhler*, 718. Jury unanimity is required for these elements. *Stuhler*, 718. Adverbial phrases introduced by the preposition "by" describe manner and means and are not elements or the gravamen of the offense. *Stuhler* at 718. Likewise, whether the injury is caused by act or omission is not elemental and does not require unanimity. *Stuhler* at 718. The jury is not required to agree upon a single manner and means. *Ngo* at 746. As set out above, what matters is that the conduct (whatever it may be) is done with the required culpability to effect the result the Legislature has specified. *Landrian* at 537. Paragraphs One through Four allege different manner and means for causing the same injury. Unanimity was not required.

However, Paragraph Five of the indictment alleges a different incident and distinct criminal conduct from the incident and conduct alleged in Paragraphs One through Four. Paragraph Five alleges an omission after the act or acts of causing serious bodily injury were complete. As set out above, injury to a child is a "result of conduct offense." *Stuhler* at 718. The gravamen of the offense is the resulting injury caused by the conduct. *Stuhler* at 718. The offense is complete when the gravamen of the offense is complete. See *Vick v. State*, 991 S.W.2d 830, 833 (Tex.Cr.App. 1999);

22

*Gonzalez Soto v. State*, 267 S.W.3d 327, 336 (Tex.App.-Corpus Christi 2008). Here, the indictment does not allege that Appellant failed or omitted to apply the brakes causing a vehicle to run over C/W causing the injury. It does not allege that Appellant omitted or failed to supervise C/W resulting in C/W's injury. To the contrary, Paragraph 5 alleges Appellant failed to seek medical care which would have occurred at a time subsequent to C/W's sustaining serious bodily injury. This alleges a different incident and distinct criminal conduct from the conduct which was done with the required culpability to effect the result. *Landrian at 537.* Seeking medical care is intended to mitigate and ameliorate the injury, not cause or add to it and there is no evidence in the record supporting the allegation that failure to promptly seek medical care would have caused C/W's injury or added to it or exacerbated the injury he had already sustained. Furthermore, the evidence does not support an omission by Appellant in failing to seek medical care. Any conduct in failing to promptly seek medical care occurred after C/W's injury was inflicted and constitutes distinct criminal conduct and is a completely different incident from the conduct and incident which caused the injury. If disjunctive paragraphs contain different criminal incidents and conduct, then a jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees that the defendant committed that conduct. *Martinez v. State*, 190

S.W.3d 254, 259 (Tex.App.-Houston [1st Dist] 2006). The trial court committed jury charge error when it submitted Paragraph 5 in the disjunctive with Paragraphs One through Four without requiring the jury to reach a unanimous with regard to Paragraph Five. *Stuhler* at 718; *Gonzalez Soto*, 267 S.W.3d at 334.

## EGREGIOUS HARM

At the charging conference of the guilt phase of the trial, Appellant's counsel did not object to any portion of the jury charge (V.8 p.83). When a defendant fails to object to the jury charge, the appellate court may reverse only if the record shows egregious harm. *Ngo*, 175 S.W.3d at 749; *Martinez*, 190 S.W.3d 259. For egregious harm to exist, the record must show the defendant suffered actual harm from the jury instruction error that affected the very basis of the case or deprived the defendant of a valuable right. *Ngo* at 750. Neither party has a burden to show harm and ordinarily there is no way to prove actual harm. *Warner v. State*, 245 S.W.3d 458, 463-464 (Tex.Cr.App. 2008). To determine whether a defendant has suffered egregious harm, the court must consider (1) the entire charge; (2) the state of the evidence; (3) argument of counsel; and (4) any other relevant information. *Martinez* at 259-260. A review of these factors is as follows:

JURY CHARGE. Each of the application paragraphs begins "if you find from the evidence beyond a reasonable doubt" and

24

all succeeding paragraphs after the first begin with "or" (CR p.926-930; V.9 p.11-15). Application paragraphs end with "But unless you so believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of Injury to a Child, as alleged in the indictment, and say by your verdict not guilty." (CR p.930; V.9 p.15-16).

The only other references concerning what must be proved are boiler plate instructions. "No person may be convicted unless each element of the offense is proved beyond a reasonable doubt." (CR p930; V.9 p.16). The prosecution must prove "each and every element of the offense charged beyond a reasonable doubt...." (CR p.931; V.9 p.16). "In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit her and say by your verdict 'Not Guilty'." (CR p.931; V.9 p.17). The jury was provided with only two verdict forms, the first stating, "We, the jury, find the defendant,...guilty of the offense of Injury to a Child, as charged in the indictment." (CR p.934; V.9 p. 19). The court orally instructed the jury, "If this is your unanimous verdict, there's a space for your presiding juror's signature." (V.9 p.19). The second verdict form states, "We, the jury, find the defendant,...not guilty of the offense of Injury to a Child, as charged in the indictment." (CR p.935; V.9 p.19-20). The court followed with "Again, if that is your

25

unanimous verdict, there's a space for your presiding juror's signature." (V.9 p.20).

THE STATE OF THE EVIDENCE. As set out above, the evidence supporting Paragraphs One through Four was mainly provided by Appellant's statements to investigators, her trial testimony, and by five medical doctors who testified to the serious bodily injury sustained by C/W and to the fact that these injuries could not have been caused by the slip and fall described by Appellant. As shown in Point of Error One, the evidence supporting Paragraph Five was insufficient to sustain a guilty verdict on that paragraph.

ARGUMENTS OF COUNSEL. On voir dire, the prosecutor pointed out that the indictment contained five separate paragraphs and that this meant that there were five different ways the State could prove its case (V.4 p.74-75). He then told the venire that if four jurors believe the top paragraph beyond a reasonable doubt and two believe Paragraph 2 and two believe Paragraph 3 and two believe Paragraph 4 and two believe Paragraph 5, "as long as that number adds up to all 12 -- okay. You have a unanimous verdict, all 12 -- then you've reached a verdict of guilt." (V.4 p.75). The State argued that if one juror thinks the State proved the first paragraph and the other 11 disagree but think the State proved Paragraph 5, "...one plus the other 11 makes 12." (V.4 p.76, see also p.81).

On final argument, the prosecutor pointed out that there

26

were five application paragraphs separated by the word "or" (V.9 p.22-23). The prosecutor then argued for a non-unanimous verdict stating that two could believe Paragraph 1, two can believe Paragraph 2, two can believe Paragraph 3, four can believe Paragraph 4, and two can believe Paragraph 5 (V.9 p. 24). "So, what does that mean? 12 to guilty." (V.9 p.25).

Only in the closing of final argument, does the State's ulterior motive regarding Paragraph Five become clear. They used Paragraph Five of the indictment to attempt to hem Appellant in stating:

"She can't all of a sudden change her story -- because there's Paragraph 5 -- she can't all of a sudden change her story and say you know what? I'm going to get on the stand and say, well, I was present when Clifton did these terrible things to his son and I did nothing and stood by.

"She can't do that. Paragraph 5 of the indictment prevents her from changing her story to that."

(V.9 p.50-51). The prosecutor again emphasized Paragraph 5 close to the end of the State's summation stating:

"I'm telling you, ladies and gentlemen, this fifth paragraph right here -- fifth paragraph right here, you take that in concert with the phone calls that she made to Aimee Mitchell at 6:01. These events happened prior to 6:00 o'clock that morning. She needed a place to stay. Somebody's going to the hospital."

27

"Why does she need a place to stay because somebody's going to the hospital? Could it be because she's trying to further herself from Clifton? Maybe she didn't want to be a part of what just happened? Or maybe she's worried Clifton is going to come after her for what she did. Either way, she's trying to create her distance there."

"....That fifth paragraph gets her -- keeps her from actually not changing her story again. That fifth paragraph says, yeah, I was there and I did nothing and I am criminally responsible. That kid was in bad shape, and I did nothing."

"Ladies and gentlemen, we've proven that...paragraph beyond a reasonable doubt."

(V.9 p.81).

"All 12 of you should go back on the very first time you vote and agree to Paragraph 5."

(V.9 p.84).

The prosecutor then went on as he had previously to argue that Appellant caused the injury rather than failed to seek medical care (V.9 p.49-50, 68-76, 82-83). To use the prosecutor's own words, "I mean you just literally have totally contradicted yourself." (V.8 p.17). The evidence is legally insufficient to support the allegations set out in Paragraph 5. The prosecutor's argument did not constitute reasonable deductions from the evidence. It was pure

28

conjecture from facts the State manufactured, not the witnesses. Yet it gave the jury an easy out which was the precise intention of the State.

In this case, there is a laundry list of factors which lead to the ultimate conclusion that Appellant suffered egregious harm from the court's failure to require a unanimous verdict for Paragraph Five.

First of all, the court's failure to instruct the jury that it must be unanimous in deciding whether Appellant was guilty of injury to a child as alleged in Paragraph Five deprived Appellant a valuable right, the right to a unanimous verdict. See _Ngo_, 175 S.W.3d at 750. _Stuhler_, 218 S.W.3d at 719. In addition, numerous factors show that Appellant suffered actual harm that affected the very basis of the case. _Ngo_ at 750.

On voir dire and at the close of evidence on final argument, the State spent considerable time explaining to the jury how its verdict need not be unanimous with regard to the various paragraphs in the indictment. See _Ngo_ at 750-751; _Stuhler_ at 719. The State's insistence during voir dire and jury argument that unanimity was not required is an important consideration in an egregious harm analysis. _Jourdan_ v. _State_ 428 S.W.3d 86, 98 (Tex.Cr.App. 2014).

However, the prosecutor didn't confine himself to his argument for a non-unanimous verdict. He made a forceful and extensive argument urging the jury to find Appellant guilty

29

of Paragraph Five. This court cannot be certain that none of the jurors relied on the allegations of Paragraph 5 in finding Appellant guilty. See *Gonzalez Soto* at p.327. If even a single juror believed that Appellant was not guilty of Paragraphs One through Four but was guilty of Paragraph Five as argued by the State, the verdict was not unanimous and, furthermore, was based on an allegation for which there was insufficient evidence. See *Ngo* at 752. This focus of the jury argument on Paragraph Five could only have increased the already substantial risk that the jury would not find it necessary to agree on whether Appellant caused the injury as in Paragraphs One through Four or was guilty of failing to promptly seek medical care after the injury as alleged in Paragraph Five. See *Stuhler* at 720.

There was no separate unanimity instruction in the application paragraphs of the jury charge. See *Gonzalez Soto*, *267 S.W.3d at 336*. In no part of the jury charge or the arguments of counsel was the jury ever informed that it must (1) unanimously agree on one or more of the paragraphs numbered one through four or (2) unanimously agree on Paragraph Five or both (1) and (2). See *Stuhler* at *719-720*. Read as a whole, the charge misled the jury into believing that only its ultimate verdict of "guilty" need be unanimous. See *Gonzalez Soto* at *p.337*. The boilerplate unanimity instructions in the charge are insufficient to mitigate the harm caused by the prosecutor's confusing and erroneous

30

argument for a non-unanimous verdict and for a conviction based on Paragraph Five of the indictment. See *Gonzalez Soto* at *p.338*. Failure to instruct the jury that it must (1) unanimously agree that Appellant was guilty of one or more paragraphs numbered one through four or (2) unanimously agree that Appellant was guilty pursuant to Paragraph Five or both (1) and (2) deprived Appellant of a fair and impartial trial. *Stuhler* at *720*. Appellant's constitutional and statutory right to a unanimous jury verdict was violated and this violation caused egregious harm to his right to a fair and impartial trial. *Ngo* at *752*.

## POINT OF ERROR THREE

**THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTIONS TO THE STATE'S ARGUMENTATIVE SIDEBAR COMMENTS.**

### RELEVANT FACTS

On voir dire, the State asserted that "A proven lie is just as good as a confession." (V.4 p.96). The prosecutor used this statement to argue that the jury should use proof of a lie as tantamount to a confession and therefore direct evidence of guilt (V.4 p.96). On opening statement, the prosecutor's first and last words were "A proven lie is just as good as a confession" (V.5 p.16, 34).

On cross-examination of Appellant, the prosecutor, tried to establish that Appellant lied about whether the father, who was on probation, had consumed alcohol and the following exchange took place:

31

Q: So, you were lying to protect him. Is that what you were saying?

A: I just didn't tell her.

Q: You didn't tell her what? The truth?

A: That he was -- that he drank, yes. That -- just because I didn't tell her doesn't mean I was lying to her.

Q: Yes, it does.

A: Well, I mean --

Q: I mean you just literally have totally contradicted yourself.

DEFENSE ATTORNEY: Objection, argumentative, Your Honor.

THE COURT: Overruled.

(V.8 p.17).

## SUMMARY OF ARGUMENT

On cross-examination of Appellant, the prosecutor, in trying to show Appellant lied in order to bolster his assertion that "A proven lie is just as good as a confession" used sidebar remarks to argue with Appellant that her failure to tell an investigator about her husband's, the father's, drinking was a lie. Specifically, the prosecutor stated, "Yes, it does." and "I mean you just literally have totally contradicted yourself." Appellant objected and was overruled.

Sidebar comments and improper argumentative questions are grounds for reversal if they interfere with Appellant's right to a fair trial. Here, the questions preceding these sidebar comments also constituted sidebar comments and

argumentative questions. They were intended to demean Appellant but the prosecutor had an ulterior motive that went beyond mere impeachment. He was attempting to bolster his assertion to the jury that "A proven lie is just as good as a confession." He asserted this on voir dire and twice in opening statement. His also asserted that proof of a lie was therefore direct evidence of guilt. A defendant's confession is probably the most probative and damaging evidence that can be admitted against him. Because proving lies was so crucial to the State's theory, these sidebar comments and improper argument went to the very essence of the case. They interfered with Appellant's right to a fair trial and constitute grounds for reversal.

## ARGUMENT AND AUTHORITIES

Sidebar remarks are remarks of counsel that are neither questions to the witness nor comments addressed to the court. *In re W.G.W.*, 812 S.W.2d 409, 416 (Tex.App.-Houston [1st Dist] 1991); *Brokenberry v. State*, 853 S.W.2d 145, 152 (Tex. App.-Houston [14th Dist] 1993). Here the prosecutor's sidebar remarks were assertions used purely to argue with Appellant: "Yes, it does." and "I mean you just literally have totally contradicted yourself." Appellant objected and was overruled.

"Improper arguments and sidebar remarks by the prosecutor have forced us to reassert the critical importance of convicting an accused only upon the evidence presented, without attempting to inflame or prejudice the minds of

33

the jurors."

*Stein v. State*, 492 S.W.2d 548, 551 (Tex.Cr.App. 1973). Here, the prosecutors remarks were clearly argumentative sidebar remarks and the trial court erred when it overruled Appellant's objection.

## HARM ANALYSIS

A misapplication of the rules of evidence is not constitutional error and harm is assessed under Rule 44.2(b) Rules of Appellate Procedure. *Cruz v. State*, 122 S.W.3d 309, 313 (Tex.App.-Houston [1st Dist] 2003). Under Rule 44.2(b), error must be disregarded unless a substantial right has been affected. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Cr.App. 2001). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson* at 4. Other caselaw has held that sidebar comments and improper argumentative questions are grounds for reversal only if they interfered with Appellant's right to a fair trial. *In re W.G.W.* at 416; *Brokenberry* at 152; *Jimenez v. State*, 240 S.W.3d 384, 407 (Tex.App.-Austin 2007). But the right to a fair trial differs little from the definition of "substantial right." Nevertheless, the burden to demonstrate whether Appellant was harmed by a trial court error does not rest on either the appellant or the State. *Coble v. State*, 330 S.W.3d 253, 280 (Tex.Cr.App. 2010); *Johnson* at 4.

In assessing harm under Rule 44.2(b), the appellate court

34

should consider everything in the record including all the evidence, the character of the alleged error and how it might be considered in connection with other evidence in the case, jury instructions, the State's theory, voir dire, and closing arguments. *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Cr.App. 2000).

To put the above facts in context, it is relevant to show that the State began its cross-examination of Appellant by stating, "Ms. Miller, is that the best story you can come up with?" (V.7 p.212). Defense counsel's objection was sustained (V.7 p.212). The prosecutor followed with "When you testified, you left out so many details." and a defense objection was again sustained (V.7 p.213). When the prosecutor asked, "Why do you refused to go into detail?", defense counsel objected but failed to obtain a ruling (V.7 p.213). This set the tone for cross-examination. These questions and sidebar remarks were calculated to embarrass and demean Appellant.

The State is entitled to impeach a witness by showing bias or interest and prior inconsistent statements. Rule 613 Texas Rules of Evidence. But the prosecutor had a much more sinister motive than merely impeaching credibility. He had already told the jury on voir dire and twice in opening statement that "A proven lie is just as good as a confession" and that proof of a lie was therefore direct evidence of guilt. That Appellant did not lie but refrained from telling

35

one of the investigators that her husband, the baby's father, had been drinking in violation of his probation did phase the prosecutor or his sense of ethics. He needed this to be a lie. The fact that it in no way constituted a confession to felony injury to a child likewise did not phase him.

Even if this could be considered a lie as the prosecutor vehemently suggested, a lie is not necessarily a confession. Here, the prosecutor's nit-picking went on ad nauseum with the prosecutor pointing out minor variances in Appellant's numerous statements to investigators, six in all to five different investigators, her grand jury testimony and trial testimony. By this tactic the prosecutor was suggesting that Appellant was repeatedly lying and therefore repeatedly confessing. He understood that a defendant's confession is probably the most probative and damaging evidence that can be admitted against him, so damaging that a jury should not be expected to ignore it even if told to do so. (1255 and 1257). _Arizona v. Fulminante_, 111 S.Ct. 1246, 1255, 1257 (1991).

On final argument, the State returned to this theme. In opening, the State repeated the premise that "A proven lie is just as good as a confession" and then proceeded to list all the people to whom the State contended Appellant lied (V.9 p.20). On closing, the State again repeated the premise (V.9 p.49) and again began the nit-picking pointing out all the minor variances in Appellant's numerous statements which the State categorized as lies. This included failing to tell

36

the investigator Haley Deem about her husband, the father, drinking alcoholic beverages which prompted the sidebar remarks (V.9 p.53-54). At the end of closing, the State reinforced the premise stating:

"Why does she have to lie? Because she's confessing to her crime."

(V.9 p.83). Thus, the sidebar remarks went to demean Appellant and reenforce the State's premise which constituted the basis of this case. Because a defendant's confession is probably the most probative and damaging evidence that can be admitted against him, *Fulminante*, 111 S.Ct. at 255, 1257, and because proving lies was so crucial to the State's theory, these sidebar comments and improper argument went to the very essence of the case. They interfered with Appellant's right to a fair trial and constitute grounds for reversal. *In re W.G.W.*, 812 S.W.2d at 416; *Brokenberry*, 853 S.W.2d at 152; *Jimenez*, 240 S.W.3d at 407. Appellant suffered egregious harm. *Johnson*, 43 S.W.3d at 4.

### PRAYER

For the above reasons, Appellant respectfully requests the judgment of the trial court be reversed. Appellant further requests that:

1. the trial court be instructed to enter a verdict of not guilty as to Paragraph Five of the indictment and that Paragraph Five be dismissed with prejudice;

2. this cause be remanded for a new trial on guilt-

innocence and/or punishment.

Respectfully submitted.

**/s/ John J. Davis**
_____

John J. Davis
P.O. Box 787
Angleton, Tx 77516-0787
SBN 05515500
Telephone: (979) 849-4362
_d.attorne@sbcglobal.net_

ATTORNEY FOR APPELLANT


**CERTIFICATE OF SERVICE**

I, hereby certify that a copy of this APPELLANT'S BRIEF SPECIFYING ERROR OF WHICH APPELLANT COMPLAINS ON APPEAL was hand delivered to David Bosserman, Appellate Assistant for the Brazoria County District Attorney's Office, Brazoria County Courthouse, 111 East Locust, Suite 408A, Angleton, Texas 77515 on this the 4th day of May, 2015.

**/s/ John J. Davis**
_____

John J. Davis